STEVE PARRILLA BÁEZ y OTROS, demandantes y recurridos, *v.* AIRPORT CATERING SERVICES, INC., codemandado y recurrido, RANGER AMERICAN OF P.R., INC. y OTROS, demandados y recurrentes.

*Número:* RE-90-406          *Resuelto:* 6 de mayo de 1993

*Teresa M. García Moll*, de *Bufete Irizarry & Otero*, abogada de los demandados y recurrentes; *Enrique Miranda Merced*, abogado de los demandantes y recurridos.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Ante la creciente ola de criminalidad que azota nuestra sociedad, los ciudadanos se han visto precisados a suplementar la protección que brinda el Estado. Esto a su vez ha propiciado la proliferación de compañías que se dedican a ofrecer servicios de seguridad. Frente a esta inescapable realidad, hemos creído conveniente reiterar las normas y los principios legales que rigen las acciones en daños por detención ilegal, difamación y persecución maliciosa que tienden a surgir cuando un ciudadano privado, como lo es un guardia de seguridad de una compañía privada, detiene ilegalmente a una persona que no ha cometido un delito. Resulta imperativo hacer hincapié sobre la necesidad que existe de que las compañías que ofrecen servicios de seguridad empleen personal idóneo adecuadamente entrenado.

Sólo así se podrán evitar posibles violaciones a los derechos de ciudadanos inocentes.

I

*Los hechos*

A continuación haremos un resumen de las determinaciones de hechos de la sentencia recurrida.

Allá para febrero de 1988 la Airport Catering Services, Inc. (en adelante Airport) estaba experimentando problemas de apropiación de mercancía por parte de sus propios empleados. Con el propósito de corregir este problema y brindar seguridad a sus facilidades, contrató a la Ranger American of Puerto Rico, Inc. (en adelante Ranger), una compañía que se dedica a ofrecer estos servicios. La gerencia de Airport celebró una reunión con los supervisores y empleados de Ranger en la cual les indicó que interesaba se vigilara cualquier conducta de sus empleados relacionada con la apropiación ilegal de mercancía, tales como bebidas alcohólicas, productos alimenticios y utensilios. También les solicitó que cuando se percataran que algún empleado había sacado mercancía de las facilidades físicas de la compañía, lo detuvieran y notificaran a la gerencia de Airport para que ésta determinara la acción a tomarse.

El 5 de abril de 1988, poco antes de las 6:00 A.M., mientras uno de los guardias de seguridad de Ranger hacía una ronda preventiva por la parte trasera de las facilidades de Airport, escuchó un ruido parecido al que se produce cuando se lanza un paquete al pavimento. Entonces vio cuando caía un bulto blanco en la quebrada que bordea la parte exterior de las facilidades de la empresa. No pudo distinguir quién fue la persona que lo lanzó. Inmediatamente fue a la caseta de seguridad y le contó a su compañero lo que había ocurrido. Éste procedió a notificar a sus supervisores en la Ranger, mientras el otro guardia re-

gresó al lugar donde había observado que lanzaron el bulto para corroborar si aún estaba allí.

Coetáneo con el incidente del bulto, los guardias de seguridad de Ranger se habían percatado que uno de los empleados de Airport, William Navarro, antes de terminar su jornada de trabajo a las 6:00 a.m., había salido dos (2) o tres (3) veces de las facilidades de Airport. En estas ocasiones había ido hasta cerca de donde se encontraba el bulto blanco y, sin tocarlo, observaba el área de la caseta y la parte posterior del edificio. Poco antes de la hora de salida del trabajo, Navarro le informó a los guardias de seguridad que estaba en espera de transportación para regresar a su casa.

Poco después, los guardias de seguridad de Ranger observaron que al finalizar su turno en el trabajo Navarro salió de las facilidades de la empresa, se dirigió hacia donde se encontraba el bulto blanco, lo recogió y colocó junto a él frente a uno de los vehículos que se encontraba estacionado a la orilla de la carretera.

A esa misma hora también terminaron su jornada de trabajo y salieron de las facilidades de la empresa los codemandantes Steve Parrilla y Rafael González. Estos eran amigos y viajaban juntos al trabajo y de regreso a sus hogares en el automóvil de Parrilla. Trabajaban en el área a cargo de las misceláneas para los vuelos; esto incluía platos, utensilios y las bebidas alcohólicas en botellas en miniatura. Al salir de las facilidades de Airport, se dirigieron al vehículo de Parrilla, se montaron y lo pusieron en marcha. Justo cuando habían pasado la caseta de seguridad, Navarro los detuvo y solicitó transportación hasta su residencia. Estos accedieron y, una vez Navarro se montó en la parte trasera y colocó el bulto blanco a su lado, comenzaron el viaje hacia sus hogares. Apenas habían transcurrido unos quince (15) minutos cuando un vehículo de la Ranger con los guardias de seguridad dentro los interceptó. Éstos les ordenaron desmontarse. Luego que

obedecieron, los esposaron y procedieron a registrar el vehículo de Parrilla donde encontraron el bulto blanco. Una vez concluyó el registro, los llevaron esposados hasta la caseta de seguridad donde los esperaban un gerente de Airport, un representante de la unión de empleados y un supervisor de Ranger. Cabe señalar que los codemandantes Parrilla y González en todo momento pidieron que se les explicara las razones para lo que estaba sucediendo.

En la caseta de seguridad los empleados de Ranger y Airport procedieron a abrir el bulto, donde encontraron ciento cuarenta y tres (143) botellas de licor en miniatura de las que Airport suple a los vuelos. Airport inmediatamente informó a los tres (3) empleados que los suspendía de empleo y sueldo hasta que se dilucidara el caso criminal. También le ordenó a los empleados de Ranger que retuvieran las tarjetas de identificación de éstos para que no pudieran entrar en sus facilidades. Aproximadamente veinte (20) minutos después, les quitaron las esposas y les permitieron regresar a sus hogares. Mientras todo esto estaba ocurriendo, se fueron acumulando como veinte (20) empleados de Airport frente a la caseta de seguridad. Preguntaban por las circunstancias que habían motivado la detención.

Al día siguiente Airport colocó en uno de los tablones de edictos de la empresa un memorando en el cual, sin especificar los nombres, se hacía un recuento de lo ocurrido con tres (3) empleados de la compañía e indicaba que éstos habían tenido que ser despedidos por haberse apropiado de unas botellas de licor en miniatura propiedad de las aerolíneas.[1]

---

[1] El memorando disponía lo siguiente:
"A TODOS LOS EMPLEADOS DE ACS

"En el día de ayer, el personal de seguridad de Ranger American se vi[o] en la necesidad de intervenir con tres empleados de ACS que se apropiaron de 130 botellas de licores en miniaturas propiedad de las aerolíneas.

"Esta conducta afecta la confianza y socava las buenas relaciones que deben existir con nuestros clientes más importantes de los cuales dependemos para nuestra continuidad y seguridad de empleo. Luego de evaluar los hechos ocurridos y la in-

El 28 de abril de 1988 Airport presentó una querella contra los demandantes Parrilla y González. Al llamarse el caso para la determinación de causa probable, González no estaba presente por encontrarse gestionando la comparecencia de un abogado. El tribunal determinó causa, le impuso una fianza de diez mil dólares ($10,000) y ordenó su arresto. González permaneció en la Penitenciaría Estatal desde el mediodía hasta las ocho de la noche (8:00 P.M.), cuando sus padres pudieron tomar prestado el importe de la fianza.

En el juicio criminal por el delito de apropiación, tanto Parrilla como González fueron absueltos perentoriamente. Al cabo de cinco (5) meses, Airport los reinstaló a sus empleos y les reintegró los salarios dejados de percibir durante el tiempo en que estuvieron suspendidos.

Por estos hechos, tanto Parrilla y sus padres como González y sus padres presentaron una demanda contra Ranger, Airport y respectivas compañías de seguros, reclamando daños por sus sufrimientos mentales y emocionales experimenta dos como consecuencia de este incidente. A base de los hechos antes expuestos, el foro de instancia determinó que la totalidad de los daños sufridos por los demandantes fue el resultado directo de los actos de los empleados de Ranger al arrestar y restringir ilegalmente la libertad de los codemandantes Parrilla y González. Condenó a Ranger y a su compañía de seguros, Fénix de Puerto Rico (en adelante Fénix), a pagar solidariamente veinticinco mil dólares ($25,000) a cada uno de los code-

---

vestigación llevada a cabo, la Compañía se vi[o] en la necesidad de despedir a estos tres empleados. Lamentamos tener que tomar este tipo de acción, pero al hacerlo así, queremos llevar un mensaje claro a todos —*la Compañía no tolerará la apropiación no autorizada de cualquier propiedad o equipo de las aerolíneas.* Queremos orientar a todos nuestros empleados que la apropiación de miniaturas de licor, puede además conllevar la violación de leyes federales con sanciones severas. A esta situación lamentablemente se exponen estos tres ex-empleados innecesariamente, además de haber perdido su empleo.

"Le instamos a cuidar y proteger la propiedad de nuestros clientes ya que esto es en el mejor interés de todos en general.

"La Gerencia." (Énfasis en el original.) *Exhibit* 6.

mandantes Parrilla y González, y tres mil dólares ($3,000) a cada uno de los padres, para un total de sesenta y dos mil dólares ($62,000).

En cuanto a Airport, el foro de instancia concluyó que no se había probado que ésta hubiese incurrido en acción u omisión que causara daños a los demandantes, por lo que desestimó la demanda y la demanda contra coparte presentadas en su contra.

Inconforme con esta sentencia, Ranger y su compañía de seguros Fénix presentaron un recurso de revisión. Alegaron, en síntesis, que el foro de instancia se equivocó al determinar que hubo una detención ilegal y que los daños sufridos por los demandantes se debieron a las actuaciones de Ranger; al desestimar la demanda contra coparte; al conceder una cuantía excesiva en daños, y al imponer el pago de dos mil dólares ($2,000) por concepto de honorarios de abogado.

Decidimos revisar y expedimos el recurso.[2]

## II

*Principios generales sobre responsabilidad "ex delicto" en acciones por detención ilegal, difamación y persecución maliciosa*

▬ Reiteradamente hemos expresado que la teoría de causalidad adecuada es la que rige en nuestra jurisdicción. Conforme a ésta, nos indica el comentarista Santos Briz, " 'no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general.' Santos Briz, *Derecho de Daños*, Ed. Revista de Derecho Privado, Madrid, 1963, págs. 215 y ss.". *Soc. de Gananciales v. Jeronimo*

---

[2] Cabe señalar que la codemandada Airport Catering Services, Inc. no compareció a la continuación de la vista en su fondo en instancia. Tampoco ha comparecido ante este Tribunal a oponerse a lo solicitado por Ranger American of Puerto Rico, Inc.

*Corp.*, 103 D.P.R. 127, 134 (1974). Véanse: *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700 (1982); *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294 (1990); *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785 (1993); Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Con respecto a la responsabilidad vicaria de una empresa por daños causados por sus empleados, el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142, dispone que la obligación que impone el Art. 1802, *supra*, es exigible no sólo por los actos o las omisiones propias del patrono, sino también por las de sus empleados cuando éstos están en gestiones de su trabajo. *Mártir Santiago v. Pueblo Supermarket*, 88 D.P.R. 229, 236 (1963); H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da. ed., San Juan, Pubs. J.T.S., 1986, Vol. II, Cap. XII, Sec. 12.04.

■ Con respecto a la procedencia de una acción en daños por detención ilegal contra una persona particular que causa o efectúa la detención de un ciudadano que no ha cometido un delito, ésta va a depender de los criterios de razonabilidad. Hay que hacer un balance adecuado "entre la obligación que toda persona tiene de cooperar en la lucha contra el crimen y el derecho que toda persona tiene a no ser privado ilegalmente de su libertad ...". Ahora bien, "[l]a razonabilidad de las actuaciones de la persona que es demandada civilmente en daños por alegada detención ilegal del demandante y su responsabilidad por ello, deben medirse tomando en consideración los siguientes factores: la persona del demandado, su edad, preparación intelectual, condiciones morales y sus experiencias previas; la persona del detenido, incluso su edad, apariencia y comportamiento; conocimiento que en la fecha de los hechos tuviera el demandado de la persona del detenido y aquellas que con él se relacionaban; la conducta sospechosa, incluso la gravedad del delito que ella pudiera implicar, el lugar, la ocasión, y la frecuencia de dicha conducta". *Ayala v. San Juan Racing Corp.*, 112 D.P.R. 804, 816–817 (1982).

■ Se han reconocido como elementos de la causa de acción de detención ilegal los siguientes: la intención de efectuar una restricción a la libertad de una persona; el que haya un acto positivo o afirmativo encaminado a producir la restricción de la libertad; que se produzca la restricción de la libertad del perjudicado; que ésta sea involuntaria; que el perjudicado sea consciente de que se le ha restringido su libertad, y que exista una relación causal adecuada entre el acto de la restricción de la libertad y el daño que reclama el demandante. *Dobbins v. Hato Rey Psychiatric Hospital*, 87 D.P.R. 30, 34–35 (1962); Brau del Toro, *op. cit.*, Vol. I, Cap. IV, Sec. 4.05.

■ En lo que respecta a la acción en daños por difamación, ésta va dirigida a vindicar el interés social sobre la reputación de la persona. *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 423 (1977); Brau del Toro, *op. cit.*, Vol. II, Cap. XVIII. Para que prospere hay que probar que la información o expresión fue publicada, que ésta es falsa y difamatoria, y que por causa de su publicación se sufrieron los daños que se reclaman. Recientemente, en *Porto y Siurano v. Bently P.R., Inc.*, 132 D.P.R. 331 (1992), tuvimos la oportunidad de expresarnos sobre la acción de difamación dentro del contexto de la relación patrono-empleado, donde ambas partes eran "personas privadas" y la alegada expresión difamatoria no era de interés público o general. Allí adoptamos la posición mayoritaria imperante en Estados Unidos "a los efectos de que se configura el elemento de publicación en las comunicaciones habidas entre los miembros de la corporación. La razón de ser de esta posición es que los empleados de una corporación son seres humanos y que al enterarse de la expresión difamatoria, la reputación del empleado afectado claramente se ve menospreciada en su trabajo". (Citas y escolio omitidos.) Íd., pág. 349.

■ En cuanto a la acción en daños por persecución maliciosa que emane de un proceso criminal, para que prospere hay que probar: que el demandado instigó la ac-

ción maliciosamente sin que existiera causa probable, que la acción criminal terminó de modo favorable para el demandante y que éste sufrió daños a consecuencia de haberse instado la acción criminal. *Parés v. Ruiz*, 19 D.P.R. 342, 346 (1913); *Rivera v. Casiano*, 68 D.P.R. 190 (1948); *Jiménez v. Sánchez*, 76 D.P.R. 370 (1954); *Fonseca v. Oyola*, 77 D.P.R. 525 (1954); *Raldiris v. Levitt & Sons of P.R., Inc.*, 103 D.P.R. 778, 781 (1975); *Ayala v. San Juan Racing Corp.*, supra, pág. 812.

La acción por persecución maliciosa no es favorecida por los tribunales, ya que ésta tiende a desalentar el que la ciudadanía coopere con el Estado en la persecución de los delitos. Esta acción requiere que se haga un balance entre el interés de la comunidad en general en que se investigue y se persiga la comisión de delitos y el igualmente importante interés social de que no se atropelle ni se persiga, arbitraria y maliciosamente, a los ciudadanos inocentes. Tomando esto en consideración, "[r]eiteradamente hemos expresado que el mero hecho de informar a las autoridades la comisión de un delito no es suficiente para imponer responsabilidad, sino que debe demostrarse que el demandado instigó activa y maliciosamente la iniciación del proceso y que no fueron las autoridades quienes a base de su propia evaluación de los hechos decidieron procesar al demandante". *Raldiris v. Levitt & Sons of P.R., Inc.*, supra, pág. 781. De igual forma, tampoco el suministrar información a las autoridades del Estado constituye, de por sí, la instigación que se requiere como elemento esencial de esta causa de acción. Íd. Véase, además, Brau del Toro, *op. cit.*, Vol. I, Cap. IV, Sec. 4.06.

### III

*La aplicación de las normas de derecho a los hechos*

Con respecto a la acción de detención ilegal, atendidos los hechos particulares del caso, resulta insostenible la posición de los demandados recurrentes de que no incurrie-

ron en responsabilidad. Los empleados de Ranger que intervinieron en el incidente eran guardias de seguridad quienes, precisamente por su función especial como tal, pudieron o debieron esperar y confirmar si en efecto la conducta de los codemandantes Parrilla y González era delictiva. La conducta que observaron estos guardias de seguridad no fue una conducta sospechosa. Los codemandantes simplemente se limitaron a salir de su trabajo, montarse en su vehículo y darle transportación a un compañero de trabajo, Navarro. Tampoco nos convence el argumento de que se trataba de un delito grave que requiría una intervención inmediata. De otra parte, los demandantes eran unos jóvenes empleados de la empresa, que salían de su trabajo y se disponían a regresar a sus casas, cuyo único error parece haber sido el haberle dado transportación a un compañero de trabajo. A la luz de estas circunstancias concluimos que los guardias de seguridad, empleados de Ranger, no actuaron razonablemente al proceder a detener y esposar a los codemandantes. No le asiste la razón a Ranger al alegar que los hechos que el tribunal dio por probados no configuran una acción en daños por detención ilegal.

Ahora bien, en lo que respecta a la codemandada Airport, el tribunal se equivocó al eximirla de toda responsabilidad. Según surge de las determinaciones de hecho, Airport no sólo contrató y delegó las funciones de seguridad en Ranger, sino que sus empleados participaron activamente en el incidente de detención ilegal. Airport solicitó a los empleados de Ranger que detuvieran a todo empleado suyo que incurriese en conducta que los indujese a creer que se estaba cometiendo el delito de apropiación y que los llamasen para que fuesen ellos los que determinaran qué hacer. Cuando los guardias de seguridad de Ranger detuvieron a los demandantes, un supervisor de Airport estuvo presente en la caseta de seguridad mientras éstos eran mantenidos allí detenidos y esposados. Este em-

pleado de Airport participó en el registro del bulto que se había ocupado en el vehículo de Parrilla. Al comprobar su contenido, procedió inmediatamente a despedir a los codemandantes y ordenar la retención de sus tarjetas de identificación. La participación de Airport en el incidente fue activa y de aquiescencia con la conducta de Ranger. No cabe la menor duda que Airport y Ranger fueron cocausantes de los daños sufridos por los demandantes dimanantes de la detención ilegal de los codemandantes Parrilla y González.

En lo que respecta a la acción por difamación, resulta también indiscutible que la actuación de Airport de publicar en un tablón de edictos de la empresa información sobre el incidente de la detención agravó los daños sufridos por los demandantes. Lo expresado en el memorando a los efectos de que los tres (3) empleados despedidos por Airport se habían apropiado de mercancía de las aerolíneas —botellas de licor en miniatura— era falso y difamatorio e iba dirigido a informar a todos los empleados de lo ocurrido y así motivarlos para que repudiasen a los codemandantes Parrilla y González por su supuesta conducta delictiva. La especificidad del contenido del memorando con respecto al incidente y el hecho de que un número considerable de compañeros de trabajo de los demandantes los habían visto esposados en la caseta de seguridad, unido al hecho de que los tres (3) fueron despedidos el día antes, según indicaba el memorando, hacía innecesario que se especificaran sus nombres para que se supiese en la empresa a quiénes se refería. Indiscutiblemente, existe una relación causal adecuada entre la publicación intracorporativa de estas expresiones difamatorias y los daños reclamados por los demandantes.

Pasemos ahora a analizar la posible acción de persecución maliciosa. Del Informe de Denuncia de la Policía sometido como prueba documental surge que el querellante fue Rafael Giraud Román, Director de Recursos Humanos

de Airport, y que los testigos fueron Rafael Román Burgos, Iván Correa Rivera y Antonio González García, identificados como las personas que sorprendieron a Parrilla, González y Navarro apropiándose de una caja que contenía ciento cuarenta y tres (143) botellas de licor en miniatura valoradas en cien dólares con diez centavos ($100.10). También se indica que éstos eran empleados de la compañía que le ofrecía seguridad a Airport. En el Informe, además, se expresa que el caso no fue sometido ante un magistrado el mismo día de los hechos porque la parte perjudicada, Airport, no tenía interés en someterlo. Mas sin embargo, posteriormente, el 25 de abril de 1988, cambiaron de parecer. Entonces el caso fue citado para el 28 de abril. La prueba se llevó primero ante un fiscal quien, luego de escuchar a las partes, ordenó someterlo por el delito de apropiación ilegal, Art. 165 del Código Penal, 33 L.P.R.A. sec. 4271. Entonces el caso fue llevado ante un magistrado quien determinó causa probable. En el juicio, tanto Parrilla como González, fueron absueltos perentoriamente.

De los hechos antes expuestos surge, con meridiana claridad, que en el caso de autos no se probó que los demandados Airport y Ranger instigaran activa y maliciosamente la iniciación del proceso criminal. Del Informe de Denuncia de la Policía se desprende que fue el fiscal, quien luego de oír a las partes, decidió someter el caso por apropiación, y que un magistrado, después de oír la prueba, determinó causa probable. O sea, que las autoridades, a base de su propia evaluación de los hechos, decidieron procesar a los codemandantes Parrilla y González.

El solo hecho de querellarse ante las autoridades o de suministrar información a un agente del orden público, ya fuere éste un policía, un fiscal o un juez, no constituye el elemento de instigación que se requiere para probar persecución maliciosa. Para que prospere una acción en daños por persecución maliciosa tiene que mediar una imputa-

ción hecha de mala fe y sin fundamento. En este caso no se probó el elemento de malicia. El foro de instancia correctamente resolvió que no procedía la imposición de daños por lo sucedido con relación al proceso criminal por apropiación seguido contra Parrilla y González.

Un análisis de los hechos en el caso de autos nos lleva a concluir que el foro de instancia no se equivocó al valorar los daños y que Airport y Ranger fueron cocausantes de éstos, por lo que responden ante los demandantes de forma solidaria. También resolvemos que Airport tuvo el sesenta por ciento (60%) de la culpa y Ranger el cuarenta por ciento (40%).

En cuanto a la determinación de temeridad, ésta descansa en la sana discreción del tribunal. *Raoca Plumbing v. Trans World*, 114 D.P.R. 464, 468 (1983). Los hechos del caso demuestran que el foro de instancia no incurrió en abuso de discreción. Con relación a la cuantía impuesta por honorarios de abogados, reiteradamente hemos resuelto que no intervendremos con ésta en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. *Corpak, Art Printing v. Ramallo Brothers*, 125 D.P.R. 724 (1990); *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339 (1989).

Por todo lo antes expuesto, *se dictará sentencia de acuerdo con lo aquí resuelto, revocando en parte y modificando en parte la emitida por el Tribunal Superior, Sala de Carolina.*

Los Jueces Asociados Señores Negrón García y Hernández Denton emitieron sendas opiniones disidentes. El Juez Asociado Señor Rebollo López concurrió con el resultado sin opinión escrita.

## – O –

Opinión disidente del Juez Asociado Señor Negrón García.

I

Airport Catering Services, Inc. (en adelante Airport) suministra las comidas y bebidas de los aviones que salen del Aeropuerto Internacional Luis Muñoz Marín. Para febrero de 1988, su gerencia detectó un serio problema interno de apropiación ilegal de mercancía. Por tal razón, contrató los servicios de seguridad de Ranger American of Puerto Rico, Inc. (en adelante Ranger). Airport le instruyó que en la eventualidad de que se percataran de que algún empleado sacaba la mercancía, lo detuvieran cuando hubiese salido de sus facilidades físicas.

Poco antes de las 6:00 A.M. de 5 de abril de 1988, el guardia de seguridad Juan Correa observó la caída de un paquete blanco (propiedad mueble) lanzado hacia el exterior desde el edificio que alberga las facilidades de la empresa. En ese momento no vio quién lo tiró. Fue a la caseta de seguridad del portón de acceso de Airport y lo notificó a su compañero de turno. Así prevenidos, poco después observaron que William Navarro, empleado de Airport, salió y entró varias veces de las facilidades. En todas esas ocasiones, Navarro se colocó frente a la caseta, miró hacia donde había caído el paquete; aunque estaba cerca, no lo llegó a tocar.

Finalizado su turno de trabajo, Navarro salió, pasó frente a la caseta y directamente fue a recoger el paquete. Una vez en sus manos, le indicó a los guardias que esperaba transportación. Tras finalizar igualmente sus turnos, Steve Parrilla y Rafael González —empleados a cargo de preparar los platos, los utensilios y las bebidas alcohólicas en botellitas en miniatura— salieron de las facilidades de Airport y se dirigieron al automóvil de Parrilla, estacio-

nado frente a la caseta aludida. Al iniciar la marcha del automóvil, Navarro les solicitó transportación hasta su residencia. Parrilla y González accedieron, y Navarro se montó en el vehículo con el mencionado paquete. Minutos después los guardias de la Ranger interceptaron el vehículo y procedieron a arrestar y a esposar a sus tres (3) ocupantes. *Del registro realizado surgió que en el paquete había ciento cuarenta y tres (143) botellas en miniatura de licor de las usadas por la Airport.* Detenidos por cierto tiempo, Airport les notificó que estaban suspendidos de empleo y sueldo hasta que se dilucidara el caso criminal que se les presentaría.

El 28 de abril Airport presentó una querella y, luego de la determinación de causa probable, los tres (3) fueron denunciados. Subsiguientemente, Parrilla y González resultaron absueltos perentoriamente y promovieron la acción civil que nos ocupa.

## II

Distinto a la conclusión mayoritaria, aquí rige la Regla 12(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, que autoriza el arresto por personas particulares "[p]or un delito cometido o que se hubiere intentado cometer en su presencia. En este caso deberá hacerse el arresto inmediatamente".

A su amparo, el criterio para arrestar excluye el concepto de motivos fundados y "requiere certeza de la comisión del delito o, cuando menos, su tentativa". D. Nevares-Muñiz, *Sumario de derecho procesal penal puertorriqueño*, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1989, pág. 50. Aunque es más riguroso, no se trata de una certeza *absoluta legal*; esto es, no significa ni se equipara con el crisol más estricto exigido para una convicción "más allá de duda razonable". La certeza de la Regla 12(a), *supra*, no es otra cosa que el conocimiento seguro y claro de la

persona que ha visto ocurrir un delito. Como criterio para arrestar, sólo "requiere de la convicción por parte del arrestante de que *ha presenciado la comisión de una conducta delictiva*". (Énfasis suplido.) O.E. Resumil de Sanfilippo, *Práctica jurídica de P.R.: derecho procesal penal*, Ed. Equity, 1990, T. 1, pág. 180.

Los hechos antes relatados están fuera de discusión. Aclarado el prisma de la Regla 12(a), *supra*, no cabe duda de que ante los ojos del guardián Correa y los de su compañero, Navarro sustrajo propiedad mueble[1] de las facilidades de Airport, y Parrilla y González —en aparente concierto y común acuerdo— le proveyeron transportación para sacarlo. *Se trata de un comportamiento revestido de una clara apariencia de ilegalidad.* Ciertamente, para fines de la Regla 12(a), *supra*, los tres (3) estaban cometiendo o intentando cometer un delito. La posterior absolución penal de Parrilla y de González en nada desvirtúa la legalidad inicial de sus arrestos.

Es improcedente en derecho la acción de daños. Debimos revocar.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

Por entender que en este caso no se configuró la acción civil por detención ilegal contra Ranger American of P.R., Inc., y que era innecesario dilucidar la procedencia de las acciones civiles por difamación y persecución maliciosa contra Airport Catering Services, Inc., disiento.

---

[1] "Bienes muebles.—Incluye dinero, mercancías, semovientes, servicios, vehículos de motor o cualquier otro objeto de locomoción, energía eléctrica, gas, agua u otro fluido, cosas cuya posesión puede pedirse en juicio, comprobantes de créditos, documentos, *o cualquier otro objeto susceptible de apropiación*. (Énfasis suplido.) Art. 7(8) del Código Penal, 33 L.P.R.A. sec. 3022(8).

Técnicamente, bajo la amplitud de esta definición, cabe el paquete (envase) por sí sólo, independientemente del valor de su contenido.

# I

Para configurar una acción civil por detención ilegal contra una persona particular que realiza un arresto es preciso: (1) que la detención haya sido ilegal conforme a la Regla 12 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y (2) que la actuación de tal persona haya sido culposa o negligente. *Ayala v. San Juan Racing Corp.*, 112 D.P.R. 804 (1982).([1])

Concurro con la mayoría en que la detención de los señores Navarro, Parrilla y González no cumplió estrictamente con la Regla 12 de Procedimiento Criminal, *supra*.([2]) Los guardias de Ranger American of P.R., Inc. (en adelante Ranger American) no tenían entera certeza de que se hubiese cometido un delito en su presencia, ya que desconocían el contenido del paquete y tampoco tenían conocimiento de la comisión de un delito grave por el cual detener a los tres (3) empleados. *Pueblo v. Velazco Bracero*, 128 D.P.R. 180 (1991).

Discrepo, sin embargo, de la conclusión de que procede la acción civil por detención ilegal. Como bien señala la mayoría, la determinación de culpa o negligencia ha de depender de criterios de razonabilidad y no de certeza. *Ayala v. San Juan Racing Corp.*, supra, pág. 815. A mi juicio, la actuación de los guardias de Ranger American fue razonable a la luz de la totalidad de las circunstancias por ellos observada.

---

([1]) En *Ayala v. San Juan Racing Corp.*, 112 D.P.R. 804, 816 (1982), explicamos que:

"Aparte de los requisitos de legalidad que hallamos en las Reglas 11 y 12 de Procedimiento Criminal ... debe recurrirse a la figura del hombre prudente o razonable, el *reasonable man* de la jurisprudencia angloamericana, equivalente al 'buen padre de familia' a que se refiere el Derecho civil."

([2]) La Regla 12 de Procedimento Criminal, 34 L.P.R.A. Ap. II, dispone que:

"Una persona particular podrá arrestar a otra:

"(a) Por un delito cometido o que se hubiere intentado cometer en su presencia. En este caso deberá hacerse el arresto inmediatamente.

"(b) Cuando en realidad se hubiere cometido un delito grave (*felony*) y dicha persona tuviere motivos fundados para creer que la persona arrestada lo cometió."

La mayoría examina la conducta de Parrilla y de González aisladamante, sin atender las actuaciones previas de Navarro. Según la mayoría, los guardias

> ... debieron esperar y confirmar si en efecto la conducta de los codemandantes Parrilla y González era delictiva. La conducta que observaron estos guardias de seguridad no fue una conducta sospechosa. Los codemandantes simplemente se limitaron a salir de su trabajo, montarse en su vehículo y darle transportación a un compañero de trabajo, Navarro. Opinión mayoritaria, pág. 274.

Esta descripción no considera cómo se veían los hechos desde el punto de vista de unos guardias que habían sido contratados precisamente para atender un problema de hurto de mercancía y que, poco antes de la detención, habían observado la conducta de Navarro, a quien Parrilla y González luego recogieron en su automóvil. Para los guardias, todo lo acontecido parecía indicar que Navarro, Parrilla y González estaban actuando en común acuerdo.

A diferencia de *Ayala v. San Juan Racing Corp.*, supra, aquí los guardias no observaron un solo acto, sino las varias salidas sospechosas de Navarro, fuera de su turno de empleo y a altas horas de las madrugada, a vigilar la caseta de seguridad y el paquete que poco antes había sido lanzado fuera de las facilidades de la Airport Catering Services, Inc. (en adelante Airport Catering) por una persona no identificada.

No le detuvieron en esas ocasiones, sino que esperaron hasta que acabara su turno a las 6:00 A.M. Vieron entonces cómo Navarro recogió el paquete tan pronto como salió y se colocó junto a la caseta de seguridad en estado de espera. Acto seguido, salieron Parrilla y González y se dirigieron al vehículo de Parrilla. Al pasar por la caseta, Navarro les detuvo y se montó en el automóvil con ellos.

Desde la perspectiva de los guardias, y ante estos hechos probados, era razonable que éstos concluyeran que los tres (3) empleados estaban actuando en común acuerdo en la comisión de una apropiación ilegal. ¿Qué debieron haber

hecho? Si los dejaban ir para una detención futura por la Policía estatal, se arriesgaban a la desaparición del paquete y de la posible prueba inculpatoria. La detención en el acto es uno de los pasos —sino el único— curso de acción posible para corroborar la sospecha de que el paquete contenía mercancía hurtada. De hecho, el registro en este caso reveló que tal paquete contenía botellas de licor pertenecientes a Airport Catering.

Ante este cuadro fáctico, no puedo subscribir la posición de la mayoría de que los guardias de Ranger American actuaron irrazonablemente al detener a los empleados Navarro, Parrilla y González. Si bien Parrilla y González resultaron absueltos perentoriamente del delito de apropiación ilegal, tal absolución no implica que la actuación de tales guardias haya sido irrazonable. Ante los mismos hechos, por lo menos un magistrado determinó causa probable para el arresto.

## II

En cuanto a las acciones civiles por difamación y persecución maliciosa contra Airport Catering, entiendo que era innecesario por parte de este Tribunal dilucidar su procedencia, ya que el tribunal de instancia no hizo conclusión de derecho alguna sobre ellas y las únicas partes con interés para solicitar la revisión de tal actuación, los demandantes, optaron por no hacerlo.

Por los fundamentos antes expuestos, disiento.