Gilberto Gierbolini, Juez Ponente
*750 TEXTO COMPLETO DE LA SENTENCIA
El 11 de diciembre de 2000, el apelante de epígrafe (en adelante Morales) presentó Escrito de Apelación y solicitó la revocación de la Sentencia emitida el 10 de octubre de 2000, notificada el 10 de noviembre de 2000, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicha sentencia, el Tribunal de Primera Instancia desestimó la demanda por despido ilegal, difamación, liquidación de licencia de vacaciones, liquidación de licencia de enfermedad y daños y perjuicios presentada por Morales.
Por los fundamentos que expondremos a continuación, CONFIRMAMOS la Sentencia recurrida.
I
Morales trabajó como vendedor en la compañía Tandy Corporation, la cual hace negocios en Puerto Rico bajo el nombre comercial de Radio Shack, Inc. (en adelante Radio Shack), desde el 28 de abril de 1986 hasta el 4 de junio de 1996, fecha en que fue cesanteado.
La última tienda a la que Morales estuvo asignado fue la de Plaza las Americas. Allí, en o alrededor de los días 28 y 29 de mayo de 1996, Morales incurrió en dos incidentes violatorios de las normas y reglas de Radio Shack. En el primero de éstos, Morales sostuvo una discusión con una compañera de trabajo por razón de la venta de una computadora que él había referido a ella. En dicho altercado, Morales utilizó vocabulario soez, un tono de voz alto y fuerte. Además, Morales exhibió una actitud amenazante y agresiva hacia ella, faltándole el respeto frente a clientes y otros empleados de Radio Shack que estaban en el área de la tienda donde aconteció el incidente. Mientras dicho incidente era objeto de investigación disciplinaria, Morales incurrió en un segundo incidente relacionado con una actuación constitutiva de hostigamiento sexual hacia otra empleada de Radio Shack. La empleada notificó a su patrono que Morales desplegó una conducta que la hizo sentir hostigada.
Luego que culminara la investigación de ambos incidentes, Radio Shack determinó que la conducta incurrida por Morales violó las reglas y normas de la empresa. Además, entendió Radio Shack que la conducta de *751 Morales afecto el buen y normal funcionamiento de la operación del negocio, su responsabilidad legal hacia los demás empleados así como, su imagen y buen nombre ante los clientes de la empresa. Radio Shack concluyó que dicha conducta era totalmente inaceptable y ameritaba separar a Morales de su empleo. Por lo que Morales fue despedido efectivo el 4 de junio de 1996. Al momento del despido, Morales recibió un documento titulado "Aviso de Despido por Causa Justificada”, el cual indicaba las razones por las cuales Radio Shack terminó su empleo, a saber: (1) hostigamiento sexual, (2) amenaza terrorista, (3) afectar la imagen de la empresa ante clientes al mostrar un comportamiento descortés, hostigante o insolente, (4) uso de lenguaje soez, (5) actuar de forma descortésy hostigante o insolente hacia sus compañeros de trabajo. Dicho documento, más adelante especificaba que "[ejmpleados despedidos con Causa Justificada recibirán pago hasta el último día de trabajo y por días de vacaciones que tengan acumulados. No recibirán ninguna otra compensación." Véase, página 164 del Apéndice del Escrito de Apelación. Radio Shack liquidó a Morales las vacaciones acumuladas y no disfrutadas. 
Así las cosas, una vez Morales fue despedido, mostró el informe de despido a los señores Miguel Alejandro, Osvaldo García y Luis Torres, empleados de Radio Shack, e informó lo ocurrido a Joan Pérez. Véase, páginas 165-168 del Apéndice del Escrito de Apelación. Posteriormente, Morales también comentó sobre el contenido del informe de despido a las siguientes personas: Dr. Víctor Roberto Fernández, Nélida Simmons, Heriberto Vega, señora Gerald, Ledo. Roberto Alonso Santiago, señor Cotto, Roberto Ura y José Cancel. Véase, páginas 169-182, del Apéndice del Escrito de Apelación. Ningún gerente, supervisor u oficial de Radio Shack con la autoridad de representarle o actuar en su nombre, hizo comentarios sobre el despido de Morales.
El 4 de julio de 1997, Morales presentó demanda sobre despido ilegal, difamación, liquidación de licencia de vacaciones, liquidación de licencia de enfermedad y daños y perjuicios contra Radio Shack. En la misma, Morales alegó que fue despedido injustificadamente, que file objeto de comentarios difamatorios e ilegales por parte de oficiales de Radio Shack, que ésta le adeuda la liquidación de licencia de vacaciones y de enfermedad y que Radio Shack incumplió su contrato de empleo. Por tal motivo, Morales solicitó al Tribunal de Primera Instancia compensación por daños y perjuicios y las liquidaciones mencionadas.
Luego de varios trámites procesales, el 8 de marzo de 1999, Radio Shack presentó ante el Tribunal de Primera Instancia una moción de sentencia sumaria y solicitó la desestimación de la demanda presentada por Morales. El 21 de abril de 1999, Morales presentó su oposición a dicha solicitud. El 21 de mayo de 1999, el Tribunal de Primera Instancia celebró una vista argumentativa en relación con la moción de sentencia sumaria.
El 10 de octubre de 2000, notificada el 10 de noviembre de 2000, el Tribunal de Primera Instancia emitió sentencia en la cual declaró Ha Lugar la moción de sentencia sumaria presentada por Radio Shack y ordenó la desestimación y archivo de la demanda presentada por Morales.
No conforme, el 11 de diciembre de 2000, Morales compareció mediante el presente escrito de apelación y solicitó la revocación de la sentencia emitida por el Tribunal de Primera Instancia que desestimó la demanda. En síntesis, Morales alegó que el Tribunal de Primera Instancia erró al desestimar todas las causas de acción de la demanda. El 11 de enero de 2001, Radio Shack presentó su Oposición al Escrito de Apelación.
II
La Ley Número 80 del 30 de mayo de 1976, conocida como la Ley de Despido Injustificado, provee indemnización para los empleados contratados por término indefinido que son despedidos sin justa causa. Esta ley define específicamente qué es justa causa. A tales efectos, la Ley Número 80 permite que un empleado sea despedido cuando el despido esté relacionado con el buen y normal funcionamiento de la empresa, y excluye de la definición de "despido por justa causa, aquél que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento," Artículo 2 de la Ley Número 80, 29 L.P.R.A. Sección 185 b. Esta ley reconoce al patrono su derecho a establecer reglas y normas que sean razonables para la dirección de su negocio, 29 L.P.R.A. Sección 185 b (e); Srio. del Trabajo v. ITT, 108 D.P.R. 536, 542 (1969).
A tenor con lo anterior, las reglas y reglamentos que establecen las normas de trabajo de una empresa y los *752 beneficios y privilegios que disfrutará el empleado, forman parte del contrato de trabajo. Como regla general, un patrón de incumplimiento de estas normas podrá dar lugar a un despido justificado. Mercedes Bus Line v. Tribunal de Distrito, 70 D.P.R. 690, 695 (1949). Los beneficios y privilegios contenidos en esas reglas o reglamentos constituyen derechos del empleado, y un despido en violación a éstos, también sería un despido injustificado. Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763, 775776 (1992); Rivera Aguila v. K-Mart de P. R. 599, 613-614 (1989). No obstante, el patrono tiene derecho a evaluar su personal, a base de las normas de la empresa, y ello debe ser tomado en consideración a los fines de considerar justa causa para el despido. Báez García v. Cooper Labs., 120D.P.R. 145, 153-154 (1987).
Las Reglas de Conducta de Radio Shack, contenidas en la sección de desempeño y conducta del empleado, disponen el tipo de conducta que no sena condonada por la compañía. A tales efectos, enumera una lista de ejemplos de conducta, no exhaustiva, que pueden conllevar hasta la terminación inmediata del empleo. Entre éstos, son pertinentes: (1) Dañar la reputación de la compañía con los clientes o terceras personas al actuar descortésmente, acosatoriámente o de manera insolente, (5) Fallar en mantener un nivel satisfactorio de cualquier aspecto del desempeño del trabajo, (6) Fallar en cumplir con los procedimientos de trabajo establecidos, (7) Fallar en mantener estándares razonables de vestimenta, aseo, conducta y expresión personal, (8) Uso de lenguaje obsceno y abusivo, (15) Actuar de manera descortés, acosatoriamente, o de manera insolente hacia algún miembro de la gerencia u otros empleados (traducción suplida por los abogados de la parte apelada). Véase, Exhibit 6 del Apéndice de la Oposición a la Apelación. Radio Shack también tiene establecida una política de hostigamiento sexual que dispone que una acción disciplinaria por este motivo, podría incluir el despido inmediato. Véase, Exhibit 7 del Apéndice de la Oposición a la Apelación.
Cabe señalar que la Ley Número 80 no favorece el despido como sanción a la primera falta. Sin embargo, el referido estatuto no excluye el despido por motivo de una primera o única ofensa, cuya intensidad de agravio así lo requiera, en protección a la buena marcha de la empresa y la seguridad de las personas que allí laboran. Una primera ofensa o falta es considerada como justa causa para el despido si por su gravedad y potencial de daño pone en riesgo el orden, la seguridad, la eficiencia y el ambiente de trabajo, afectando de esa forma la buena marcha y el funcionamiento normal de la empresa. Ruy Delgado Zayas v. HIMA, 137 D.P.R. 643, 650 (1994); Torres Solano v. Puerto Rico Telephone Company, 127 D.P.R. 499, 515 (1990); Srio. del Trabajo v. ITT, supra, páginas 542-543.
Por otro lado, el remedio que tiene el ex-empleado es una indemnización según dispuesto en 29 L.P.R.A. Sección 185 a, según enmendada. Dicha mesada constituye un remedio de carácter exclusivo. David René Biver v. Cooperativa Federal de Empleados Telefónicos, 98 J.T.S. 33, a la página 727; Acevedo Santiago v. Western Digital del Caribe, Inc., 140 D.P.R. 452, 459 (1996); Iván Porto v. Bentley Puerto Rico, 132 D.P.R. 331, 342 (1992); Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35, 65 (1986); Rivera v. Security National Life, 106 D.P.R. 517, 526 (1977). Solamente en contadas excepciones, el remedio otorgado en la Ley Número 80 no constituye el único remedio a que tiene derecho el empleado despedido injustificadamente. Entre estas excepciones, podemos encontrar la violación de una política pública de rango constitucional, Arroyo v. Rattan Specialties, supra, a la página 65, o alguna actuación discriminatoria por parte del patrono. 
En lo referente al concepto de difamación (libelo y calumnia), en Puerto Rico está reconocida la acción de daños y perjuicios. Esta acción va dirigida a vindicar el interés social sobre la reputación de la persona. Parrilla Báez v. Ranger American of P.R., 133 D.P.R. 263, 272 (1993).
En una acción civil por difamación, hay que probar: (1) la falsedad de la información publicada; (2) los daños reales sufridos a causa de dicha publicación; (3) si el demandante es una figura privada, hay que demostrar que las expresiones fueron hechas negligentemente; (4) si el demandante es una figura pública, hay que demostrar que las expresiones se hicieron con malicia real, es decir, a sabiendas de que era falsa o con grave menosprecio de si era falso o no." Garib Bazán v. Clavell, 135 D.P.R. 475, 482 (1994); Méndez Arocho v. El Vocero de Puerto Rico, 130 D.P.R. 867, 877-878 (1992); Villanueva v. Hernández Class, 128 D.P.R. 618, 642-643 (1991); Maldonado y Negrón v. Marrero y Blanco, 121 D.P.R. 705, 713 (1988); Ocasio v. Alcalde Municipio Guaynabo, 121 D.P.R. *753 37, 61-62 (1988); Sociedad de Gananciales v. López, 116 D.P.R. 112, 115 (1984); Oliveras v. Paniagua Diez, 115 D.P.R. 257, 262 (1984); García Cruz v. El Mundo, 108 D.P.R. 174, 178 (1978); Zequeira Blanco v. El Mundo, 106 D.P.R. 432, 435 (1977); Torres Silva v. El Mundo 106 D.P.R. 415, 421 (1977). Así, la acción por difamación constituye una acción torticera intencional en cuanto a figuras públicas, y una acción de daños y perjuicios cuando el sujeto perjudicado es una persona privada.
El daño "es el menoscabo de la opinión que tienen los demás sobre la opinión de una persona en particular. En la medida en que la persona se entere que su honor ha sido perjudicado, es que existe el daño." Ojeda v. El Vocero, 137 D.P.R. 315, 323 (1994).
El elemento de publicación queda configurado cuando la expresión difamatoria es comunicada a una tercera persona. Acevedo v. Western Digital Caribe, 140 D.P.R. 452, supra, a la página 461; Giménez Alvarez v. Silén 131 D.P.R. 91, 99 (1992). No obstante, cuando es la propia persona afectada quien comunica a terceros la expresión difamatoria, no queda configurado el elemento de la publicación. Porto v. Bentley P.R. Inc., 132 D.P.R. 331, 347 (1992).
En relación con lo anterior, en casos de reclamaciones laborales, el Tribunal Supremo ha resuelto que aun en el supuesto de que la carta de despido contenga información falsa y difamatoria y de que la misma haya sido objeto de publicación, esto no constituye base para una acción por libelo si la misma cualifica como una comunicación privilegiada. "Una información privilegiada es aquélla que a no ser por la ocasión y circunstancia, sería difamatoria y sujeta a reclamación." Díaz v. P.R. Ry. Lt. & Co., 63 D.P.R. 808, 812 (1944). El privilegio es condicional cuando "comprende la publicación de toda comunicación hecha de buena fe con relación a un asunto en que el autor tiene interés o con respecto al cual tiene un deber que cumplir hacia otros. Se le considera condicional porque la persona que lo utiliza deberá hacerlo de acuerdo con la ley y para un fin apropiado," Caraballo v. P.R. Ilustrado, Inc., 70 D.P.R. 283, 291 (1949). En este sentido, son consideradas como condicionalmente privilegiadas, las siguientes: comunicaciones del patrono a gerentes o supervisores de un empleado despedido, informándoles las razones del despido; comunicaciones hechas a patronos prospectivos informándoles la razón del despido del empleado; manifestaciones hechas en las hojas de evaluación de rendimiento de un empleado; dando información de referencia acerca de un empleado a otros patronos potenciales; comunicaciones entre supervisores y empleados de personal. Porto v. Bentley P.R. Inc, supra, a la página 349.
Por otra parte, el Artículo IV del Decreto Mandatorio Número 42 de la Junta de Salario Mínimo aplicable a la industria de comercio al por menor y el Manual de Empleados de Radio Shack, gobiernan lo relacionado al tema del derecho a vacaciones de los empleados de ésta. Conforme a los mismos, Morales tenía derecho a una acumulación de 15 días de vacaciones al año.
En cuanto a la licencia por enfermedad, el Decreto Mandatorio dispone que la licencia por enfermedad no usada por el empleado durante el curso del año, quedará acumulada para los años sucesivos hasta un máximo de (30) días." El mismo no contempla un derecho a 1a liquidación de la licencia por enfermedad acumulada y no utilizada a la fecha de la terminación del empleo. Por tal motivo, recurrimos a las disposiciones de la Ley Número 84 del 20 de julio de 1995, 29 L.P.R.A. Sección 245 y siguientes, sobre los derechos adquiridos en relación con la licencia de enfermedad. La mencionada ley dispone en 29 L.P.R.A. Sección 247 que: "La licencia de enfermedad acumulada bajo un decreto mandatorio y no usada, que a la fecha de la vigencia de esta ley exceda de quince (15) días, podrá ser liquidada previo acuerdo entre el patrono y el empleado. "Acorde con esto, el Manual de Empleados de Radio Shack dispone que el 50% de la licencia por enfermedad acumulada y no utilizada en exceso de 30 días, será liquidada y el remanente será acumulado para el próximo año calendario para aquellos empleados activos."
III
Morales señala que el tribunal de instancia erró: (1) al determinar que él había incurrido en hechos constitutivos de hostigamiento sexual en su modalidad de ambiente hostil hacia otra empleada de la empresa, y de esa forma incurrir en una violación de las reglas y normas de la empresa, (2) al resolver que no tiene una causa de *754 acción por difamación por no haber estado presente el elemento de publicación a terceros, (3) al desestimar las causas de acción para la reclamación de licencia de vacaciones y días de enfermedad, y (4) al desestimar la causas de acción por difamación y de violación de una clara política pública al amparo de la Constitución del Estado Libre Asociado de Puerto Rico. Sin embargo, de la aplicación de las normas anteriormente expuestas, surge que dichos errores no fueron cometidos.
Morales fundamenta su primer señalamento de error en el hecho de que el tribunal de instancia solamente atendió las declaraciones de dos empleadas de Radio Shack sin brindarle oportunidad de ofrecer su versión de los hechos sobre las alegaciones de hostigamiento sexual. Claramente, el tribunal de instancia establece en la sentencia recurrida que Morales fue despedido por la conducta amenazante que desplegó en la tienda ante clientes y demás empleados en contra de una compañera de trabajo en ocasión de una venta de una computadora. El incidente que dio lugar a la alegación de hostigamiento sexual fue considerado por el tribunal de instancia como un agravante que fortaleció la decisión ya tomada por Radio Shack de despedir a Morales. Además, ante el tribunal de instancia, Radio Shack admitió que no entrevistó a Morales durante la investigación de ambos incidentes. No obstante, el tribunal entendió que la omisión de no entrevistar a Morales durante el curso de la investigación de los incidentes, no invalidaba los méritos de la acción disciplinaria tomada ante la gravedad de las violaciones incurridas. Aunque lo preferido, y lo que usualmente se debe hacer, hubiese sido que se entreviste al empleado, en el presente caso no era necesaria la versión de Morales relacionada a la comisión de los hechos constitutivos de hostigamiento sexual, ya que, como señaláramos antes, su despido estuvo fundamentado en su conducta amenazante desplegada en contra de otra empleada, y no en el hecho de que hubiera cometido actos constitutivos de hostigamiento sexual. La conducta impropia de Morales frente a empleados y clientes de la tienda constituyó una clara violación a las reglas de conducta establecidas por Radio Shack. La misma no podía ser tolerada y constituía motivo suficiente para despedirlo.
Morales alega, en segundo lugar, que el tribunal de instancia erró al resolver que no tiene una causa de acción por difamación por no haber estado presente el elemento de publicación a terceros. Morales fundamenta su posición en el hecho de que tenía anunciados dos testigos que declararían sobre los actos difamatorios de Radio Shack. De un examen de la oposición a la sentencia sumaria presentada por Morales, no surge que éste demostrara que existiera controversia sobre los hechos relacionados con dicha causa de acción. Véase, páginas 251-260 del Apéndice del Escrito de Apelación. Morales no puede presentar en este foro apelativo cuestiones que no argumentó en etapas anteriores a este procedimiento. Además, de los documentos y de la evidencia que obran en nuestro expediente, surge con claridad que Morales no aportó ante el tribunal de instancia prueba contundente a los efectos de que gerenciales o representantes de Radio Shack hubieran hechos comunicaciones externas, o sea, a personas ajenas a la compañía, acerca de la alegada expresión difamatoria contenida en la carta de despido. La única prueba de la publicación del contenido de dicha carta, lo constituye la propia actuación de Morales al voluntariamente mostrar la carta a sus compañeros de trabajo y a terceras personas ajenas a la compañía. El mismo Morales admitió este hecho. El elemento de publicación no queda configurado cuando es el mismo empleado, alegadamente afectado por la información libelosa, quien la divulga. Radio Shack en ningún momento hizo público, ni la carta, ni las razones del despido.
En relación con lo anterior, Morales alega que el Tribunal de Primera Instancia erró al desestimar las causas de acción por difamación y de violación de una clara política pública al amparo de la Constitución del Estado Libre Asociado de Puerto Rico. Morales sostiene que debido a que Radio Shack actuó negligentemente en el modo en que realizó la investigación de los incidentes, tiene derecho a invocar la excepción a la exclusividad del remedio de la Ley Número 80 de 1976. La mesada que establece la Ley Número 80 constituye un remedio de carácter exclusivo, a no ser que haya ocurrido una violación de una política pública de rango constitucional o alguna actuación discriminatoria por parte del patrono para que proceda, además, una reclamación en daños y perjuicios. Como resolviera el Tribunal de Primera Instancia, dicha excepción no es aplicable a Morales. Radio Shack no ha actuado, ni ha tenido la intención de frustrar una política pública establecida en nuestra Constitución. Tampoco atentó contra ningún derecho constitucional de Morales. Lo que Radio Shack hizo fue implantar el cumplimiento de sus reglas y normas. Morales incurrió en una falta grave que culminó en la terminación de su empleo. Este asumió una actitud agresiva, intimidante y amenazante ante clientes y demás empleados. Su *755 comportamiento alteró la seguridad de sus compañeros de trabajo y afectó la imagen de Radio Shack ante los clientes que estaban allí presente. Radio Shack tomó la decisión que estimó prudente y razonable, dada las circunstancias, y el Tribunal de Primera Instancia resolvió que la misma estuvo justificada conforme a las disposiciones de la Ley Número 80.
El Tribunal de Primera Instancia también actuó correctamente al no conceder a Morales la liquidación de su licencia de enfermedad. Las disposiciones mencionadas no contemplan la liquidación de los días por enfermedad al finalizar el empleo, a no ser que haya habido un acuerdo entre patrono y empleado. Morales no solicitó, ni Radio Shack ofreció liquidar los días por enfermedad actimulados. No hubo el acuerdo requerido entre el patrono y el empleado a esos efectos. Toda vez que ni el Decreto Mandatario, ni la Ley Número 84, supra, disponen para la liquidación de la licencia de enfermedad a la fecha de terminación del empleo, Morales no tiene derecho a tal liquidación. Solamente Morales tiene derecho a aquéllo que Radio Shack ofrece en virtud de una, política interna. Radio Shack honró a Morales la liquidación por los días de enfermedad acumulados según lo establece el Manual de Empleados (que excedieran de 30 días). En los años en que no hubo ese exceso acumulado y no utilizado, no procedía dicha liquidación, por lo que no fue hecha. Su reclamación bajo este concepto era, pues, improcedente.
IV
En virtud de los fundamentos que anteceden, CONFIRMAMOS la Sentencia recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 25
1. Radio Shack tiene establecidos procedimientos, políticas, normas y reglas de conducta debidamente implantadas y oportunamente notificadas a Morales.
2. La frase amenaza terrorista que aparece en el informe de despido fue utilizada en relación con la conducta aterrorizante que Morales llevó a cabo al gritar y tratar grosera y agresivamente a su compañera de trabajo frente a clientes y otros empleados de Radio Shack, y no a la comisión de un delito o al hecho de que Morales fuera un terrorista, según la acepción que comúnmente tiene este vocablo. De cualquier manera, Morales no fue despedido por ser un terrorista, sino por la conducta impropia incurrida.
3. Durante el curso de su empleo con Radio Shack, Morales tenía derecho a quince (15) días de vacaciones al año, las cuales disfrutó cada año de empleo.
4. Morales fue a la compañía American Business Forms y solicitó una carta de referencia en relación con su comportamiento hacia el personal de esa compañía cuando éstos visitaban la tienda Radio Shack. Morales recibió dos cartas firmadas por los señores Roberto Ura y José Cancel, Presidente y Vicepresidente, respectivamente, de American Business Forms. Ese mismo día, recibió de parte de éstos una oferta de empleo que Morales aceptó aproximadamente uno o dos meses más tarde.
5. Alegación que no ha sido formulada en el caso.
6. Figura pública es considerada toda aquella persona que posea: "(1) especial prominencia en los asuntos de la sociedad; (2) capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público, y (3) participación activa en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de las cuestiones envueltas." Torres Silva v. El Mundo, 106 D.P.R. 415, 422 (1977).
7. En cuanto a los días de vacaciones a los que Morales tenía derecho, quedó demostrado ante el Tribunal de Primera Instancia que Morales tenía derecho a 15 días de vacaciones al año y éste admitió haberlos disfrutado cada año de empleo con Radio Shack.