Miranda De Hostos, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
La parte apelante Horacio Suero Pérez et ais. y Héctor Javier Olivero Tirado, et ais., acuden ante nos de una sentencia parcial emitida por el Tribunal de Primera Instancia, Sala de Carolina, que declaró con lugar una moción de sentencia sumaria presentada por la parte apelada Eli Lilly Industries, Inc. (en adelante Eli Lilly) y en consecuencia procedió a desestimar las causas de acción presentadas por la parte apelante por despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185a et seq.; por discrimen por razón de origen nacional al amparo de la Ley Núm. 100 de 30 de junio de 1959, mejor conocida como la Ley General contra el Discrimen en el Empleo en Puerto Rico, 29 L.P.R.A. see. 146 et seq. \ por difamación, libelo y calumnia bajo la Ley de Libelo y Calumnia; por violación a derechos constitucionales y por detención ilegal.
Se confirma la sentencia parcial apelada. Veamos los fundamentos.
I
A
Trasfondo fáctico
Para el mes de octubre de 1988, el apelante Héctor Javier Olivero Tirado, (en adelante Olivero Tirado) comenzó a trabajar para Eli Lilly en calidad de empleado temporero y el 9 de febrero de 1989, pasó a ser empleado regular de la compañía. (Ap., págs. 409-410, 419.)
*644 El 5 de noviembre de 1990, el apelante Horacio Suero Pérez, (en adelante Suero Pérez) de nacionalidad dominicana, comenzó a trabajar para la compañía Eli Lilly como empleado temporero. (Ap., pág. 173.) Posteriormente, el 26 de agosto de 1991, fue nombrado empleado regular específicamente en el puesto de operador de procesos y fue asignado al área de producción de la Planta PR03.
El 12 de septiembre de 1997, aproximadamente a las 2:30 p.m., el apelante Olivero Tirado encontró varias pastillas o púlvulas parecidas a las que fabrica Eli Lilly, en el piso del área de los baños de los varones y “lockers” en las facilidades de la planta PR03, las cuales recogió y dispuso de ellas en uno de los inodoros. (Ap., págs. 252-253.) En el momento en que esto sucede, estaba pasando por el área Jorge Velázquez, uno de los guardias de seguridad contratados por Eli Lilly a través de la compañía de seguridad St. James Security, que observó lo ocurrido. (Ap., págs. 254-255, 360.) El señor Jorge Velázquez procedió a notificar todo lo sucedido a su supervisor y se preparó un informe sobre el incidente, en el cual se localizaba al apelante Suero Pérez en el área de los baños y los “lockers” en el momento que Olivero Tirado, dispuso de las pastillas por uno de los inodoros. (Ap. págs. 333, 344-348, 373-375.)
El 15 de septiembre de 1997, a consecuencia de los hechos ocurridos el 12 de septiembre de 1997, Eli Lilly comenzó una investigación de lo ocurrido, pues el incidente aparentaba ser una violación a las normas de seguridad de la compañía. (Ap., págs. 328-332 y 380.) Como parte de la investigación, miembros gerenciales de Eli Lilly, en específico el señor José Arce, la señora Nancy Rivera, el señor Nelson Crespo y el ingeniero Alberto Rodríguez Liado, se reunieron con el apelante Olivero Tirado a puerta cerrada para preguntarle sobre el incidente de las pastillas. (Ap., págs. 256-257, 259, 358-364.
Durante la celebración de dicha reunión que duró media hora, Olivero Tirado admitió haber encontrado unas pastillas en el área de los baños y “lockers” las cuales había desechado en uno de los inodoros. Además, admitió que en el momento en que ocurrió el incidente había visto al señor Juan Álamo y cuando se disponía a salir de los “lockers” había visto cambiándose a los supervisores Héctor Tirado y Rubén Suárez. (Ap., págs. 259-269.) Por último, expresó que no había informado a dichos supervisores ni ninguno otro de su hallazgo y se negó a proveer información adicional alegando que no quería implicar a nadie más. (Ap., págs. 261 y 365.) En el transcurso de la reunión, Olivero Tirado no solicitó retirarse de la misma, ni en ningún momento se levantó de la silla en la cual se encontraba sentado con la intención de retirarse de la reunión. (Ap., págs. 308-309.)
Eli Lilly, de acuerdo a lo informado en la reunión por Olivero Tirado, decidió como medida preventiva suspenderlo de empleo, pero no de sueldo, mientras se terminaba la investigación y le indicó que sería escoltado hasta el área de los “lockers’’ para que se cambiara de ropa y que debía esperar a que la compañía le avisara sobre el resultado de la investigación. (Ap., págs. 337, 351-352, 365-370.) Una vez concluyó la reunión, el señor Olivero Tirado fue acompañado por el ingeniero Rodríguez Liado y por dos (2) guardias de seguridad hacia el área de los “lockers”, para que se cambiara de ropa y de ahí fue escoltado hasta la salida. Los guardias de seguridad no estaban armados y en ningún momento le restringieron el paso, ni interfirieron con la forma o manera que él caminaba, lo esposaron o agarraron. (Ap., págs. 266-269.)
Posteriormente, ese mismo día, el 15 de septiembre de 1997, una vez finalizada la reunión con Olivero Tirado, el señor Nelson Crespo procedió a buscar a Suero Pérez y se reunieron con los demás gerentes, José Arce, Nancy Rivera Sepúlveda, y el ingeniero Alberto Rodríguez Liado, para indagar de su conocimiento respecto al incidente del 12 de septiembre de 1997. (Ap., págs. 190-191, 212-217, 352, 382-392.) En la reunión que se celebró a puerta cerrada, Suero Pérez indicó que no sabía nada del incidente de las púlvulas y lo que sabía lo había escuchado de otros compañeros que se encontraban en el baño en ese momento y que no quería implicar a nadie. (Ap., págs. 191-196, 397-398.)
Como consecuencia de lo expresado por Suero Pérez en la reunión, la gerencia de Eli Lilly determinó tomar la medida preventiva de suspenderlo indefinidamente de empleo, pero no de sueldo, debido a la duda que existía *645 de su posible implicación con los hechos. (Ap., págs. 218-220, 399-403.) Luego de esto, Suero Pérez fue escoltado por su supervisor, Nelson Crespo, hasta su “locker”, para que recogiera sus cosas y de ahí lo acompañó hasta la salida. (Ap. págs. 197-199, 221.)
El 17 de septiembre de 1997, luego de haberse concluido la investigación, Nancy Rivera se comunicó vía telefónica con el señor Suero Tirado para informarle que se reportara a trabajar el 18 de septiembre de 1997 en su horario regular y que a las 8:30 a.m., tendría una reunión en la oficina de José Arce. (Ap., págs. 200, 236-237.) Ese mismo día, Nancy Rivera llamó por teléfono a Olivero Tirado y le informó a su esposa que éste debía reportarse a trabajar al día siguiente. (Ap., págs. 280-281.) Sin embargo, Olivero Tirado no pudo reportarse a trabajar ese día, ni por los próximos meses, debido a que había solicitado acogerse a los beneficios del Fondo del Seguro del Estado (FSE). (Ap., págs. 282, 353-354.)
El 18 de septiembre de 1997, el apelante Suero Pérez se presentó a trabajar en su horario regular de 6:00 a.m. a 2:30 p.m. y alrededor de las 8:30 a.m., se reportó para una reunión a la oficina de José Arce y en la cual estaba Nelson Crespo y Nancy Rivera. En dicha reunión se le notificó que la compañía había concluido la investigación y que había determinado que él no tenía nada que ver con el incidente de las púlvulas y que interesaban que se reportara a trabajar. (Ap., págs. 200-201, 316-317.) Suero Pérez solicitó tomar con cargos a vacaciones el resto del día y el siguiente, y luego cogió varios días con cargo a sus balances de licencias por enfermedad, bajo los beneficios del FSE, donde recibió tratamiento en descanso hasta el mes de febrero de 1998, fecha para la cual dicha agencia le permitió continuar tratamiento mientras trabajaba. (Ap., págs. 203, 207, 240.) El 11 de febrero de 1998, Suero Pérez regresó a trabajar a Eli Lilly en el área de producción y manufactura a la misma posición que ocupaba antes de que fuera suspendido. (Ap., págs. 163,178, 240.)
Para el 6 de noviembre de 1997, Olivero Tirado se presentó en la planta PR03 de Eli Lilly con la intención de visitar la cooperativa allí ubicada, para realizar unas transacciones, por lo que se dirigió a la caseta del guardia para solicitar una tarjeta provisional. (Ap., págs. 289-290.) El guardia de la caseta procedió a llamar a un supervisor para solicitarle instrucciones, pues no le constaba si Olivero Tirado todavía trabajaba para la compañía, debido a que existía un reglamento que toda persona que no trabajare para la compañía, debía ser escoltada. El supervisor le indicó que escoltara al señor Olivero Tirado, hasta la cooperativa, lo que se llevó a cabo. (Ap., págs. 291-296; 405-407.)
El 22 de febrero de 1998, Olivero Tirado regresó a trabajar a Eli Lilly a la misma posición que ocupaba en la planta PR03. Para el mes de abril o mayo de 1998, el FSE dio de alta a Olivero Tirado y no pudo relacionar su condición de salud con su trabajo en Eli Lilly. (Ap. págs. 285-286 y 297-298.) Alrededor del 2 de marzo de 1998, Olivero Tirado fue transferido a ocupar la posición de operador de bioquímica en la planta PR02, lo que conllevó un aumento salarial de .25 centavos por hora, plaza que había solicitado ocupar desde agosto de 1997, o sea, antes del incidente de las pastillas. (Ap., pág. 298-299.)
En diciembre de 1998, Suero Pérez fue promovido al puesto de operador “senior” de manufactura en la escala N8. (Ap., pág. 233.)
B
Trasfondo procesal
El 17 de agosto de 1998, el apelante Suero Pérez y su madre Rhina Pérez, presentaron ante el tribunal de instancia demanda por daños y perjuicios, difamación, libelo y calumnia, despido injustificado, violación a sus derechos constitucionales, discrimen por razón de origen nacional y por detención ilegal contra la parte apelada Eli Lilly. Dicha parte apelante alegó que fue objeto de discrimen por razón de origen nacional por ser dominicano, todo ello en violación a la Ley Núm. 100 de 30 de junio de 1959, supra, y a sus derechos constitucionales. (Ap., págs. 12-13.) Además, alegó que por los incidentes ocurridos el 12 de septiembre de 1997, la compañía Eli Lilly *646 lo difamó y cometió actuaciones libelosas y calumniosas. (Ap., págs. 8, 13.) También sostuvo la parte apelante que la suspensión de la cual fue objeto constituyó un despido injustificado al amparo de la Ley Núm. 80, supra, y que le privaron indebidamente de su libertad. (Ap., pág. 5.) Por último, alegó que las actuaciones de su patrono Eli Lilly le causaron daños y perjuicios al amparo de los artículos 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141 y 5142. (Ap., pág. 14.)
El 14 de septiembre de 1998, el apelante Olivero Tirado, su esposa Brenda María Ayala Matos así como la Sociedad Legal de Gananciales que ambos componen y sus hijos menores de edad Alexander Javier, Xavier y Michael todos de apellidos Olivero Ayala, presentaron demanda contra Eli Lilly por daños y perjuicios, libelo y calumnia, despido injustificado, violación a derechos constitucionales, discrimen por razón de sus ideas religiosas y por detención ilegal.
El 29 de octubre de 1998, Eli Lilly presentó ante el tribunal de instancia su escrito de contestación a la demanda presentada por Suero Pérez y su madre. En el mismo, la compañía negó tener cualquier tipo de responsabilidad y alegó que los alegados daños reclamados en la demanda se debieron a las actuaciones y omisiones de la parte apelante; que los elementos de la causa de acción por libelo y calumnia no se configuraron, toda vez que no hubo publicación de información falsa o imputaciones difamatorias; que no se realizó ningún acto constitutivo de violación a derechos constitucionales de discrimen por razón de origen o nacionalidad y que nunca hubo actuaciones de despido. (Ap., págs. 23-25.)
La parte apelante Olivero Tirado, su esposa e hijos presentaron demanda enmendada el 23 de noviembre de 1998, a los efectos de detallar mejor las cuantías reclamadas. Así las cosas, el 4 de febrero de 1999, Eli Lilly presentó su contestación a la demanda enmendada y negó tener cualquier tipo de responsabilidad por las reclamaciones hechas por dicha parte.
El 14 de abril de 1999, el Tribunal de Primera Instancia, a solicitud de la parte apelada Eli Lilly, emitió una resolución consolidando por economía procesal los casos FDP-98-0495 y FAC-98-0544. El apelante Olivero Tirado presentó el 5 de agosto de 1999, desistimiento de su causa de acción por discrimen por concepto de sus ideas religiosas presentada al amparo de la Ley Núm. 100, supra, la cual fue declarada con lugar el 11 de agosto de 1999, por el Tribunal de Primera Instancia.
Luego de innumerables trámites procesales y de haber concluido la fase de descubrimiento de prueba, la parte apelada Eli Lilly presentó el 21 de mayo de 2003 ante el foro apelado, una moción de sentencia sumaria solicitando la desestimación de todas las causas de acción. El 12 de junio de 2003, la parte apelante presentó oposición a la moción de sentencia sumaria y finalmente el 20 de junio de 2003, el Tribunal de Primera Instancia emitió una sentencia parcial declarando con lugar la moción de sentencia sumaria presentada por la apelada Eli Lilly. En su dictamen, el foro de instancia desestimó la causa de acción presentadas por despido injustificado ál amparo de la Ley Núm. 80, supra; la de discrimen por origen nacional presentada al amparo de la Ley Núm. 100, supra; las de difamación, libelo y calumnia; las de violación a los derechos constitucionales y las de detención ilegal. (Ap., pág. 99.) En virtud de ello, sólo quedaron pendientes por dilucidar en un juicio plenario las alegadas causas de acción por daños y perjuicios como consecuencia de la suspensión de empleo y sueldo de dos (2) días, a las que fueron sometidos los apelantes Suero Pérez y Olivero Tirado, por el incidente del 12 de septiembre de 1997, y en específico, la razonabilidad de la apelante para efectuar la suspensión y su responsabilidad, si alguna, portal actuación. (Ap., pág. 99.)
Inconforme con dicha determinación, la parte apelante instó ante este Tribunal de Circuito de Apelaciones, el presente recurso de apelación.
II
Expuestos los hechos pertinentes a la controversia ante nuestra consideración, procedemos a exponer la *647 norma jurídica aplicable a los aspectos sustantivos.
Como primer error, alega la parte apelante que incidió el tribunal de instancia al concluir que la parte apelante había presentado una causa de acción por despido injustificado al amparo de la Ley Núm. 80, supra, y al desestimar las mismas.
No les asiste la razón. Veamos porqué.
A
Ley sobre despido injustificado
La Ley Núm. 80 de 30 de mayo de 1976, mejor conocida como la Ley de Indemnización por Despido Injustificado, supra, tiene un valioso propósito social y coercitivo, que es el sancionar que un patrono despida a sus empleados, salvo que demuestre una causa justificada para ello. Jusino Figueroa v. Walgrees, opinión de 1 de noviembre de 2001, 2001 J.T.S. 154, pág. 371. Además del fin proteccionista que tiene dicha ley, tiene un fin reparador, pues provee remedios justicieros y consubstanciales con los daños que puede haber causado a un cesanteado un despido injustificado. Beauchamp v. Holsum Bakers of P.R., 116 D.P.R. 522, 526 (1985).
En vista de su propósito reparador, la Ley Núm. 80, supra, deberá siempre interpretarse de manera liberal y favorable al empleado. Jusino Figueroa v. Walgrees, supra; Belk v. Martínez, 146 D.P.R. 215, 232 (1998).
El Artículo 5 de la Ley Núm. 80, supra, ha definido el término despido, además de la cesantía del empleado, como la suspensión de un empleado por tiempo indefinido o por un término que exceda de los tres (3) meses, excepto en el caso de empleados de industria y negocios estacionales o la renuncia del empleado motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar. 29 L.P.R.A. sec. 185e.
B
Aplicación del derecho a los hechos del caso
Los apelantes Suero Pérez y Olivero Tirado, nunca fueron despedidos de su empleo en la compañía Eli Lilly por los hechos ocurridos el 12 de septiembre de 1997; simplemente fueron suspendidos de empleo, pero no de sueldo, por un período de dos (2) días, en el cual se concluía la investigación de lo que aparentaba ser una violación a las normas de seguridad de la compañía.
Ante tales circunstancias no se puede decir que la parte apelante hubiera sido despedida a tenor con los supuestos establecidos en el Artículo 5 de la Ley Núm. 80, supra, pues la suspensión duró dos (2) días e inmediatamente la compañía concluyó su investigación fueron reinstalados en sus puestos.
La parte apelante nos alega que de una lectura de las demandas presentadas ante el Tribunal de Primera Instancia, se demuestra que en ningún momento se reclamó el pago de la mesada ni ningún otro remedio de los dispuestos en la Ley Núm. 80, supra. (Escrito de Apelación, pág. 19.) Además, la parte apelante nos señala en su escrito de apelación que durante la celebración de la conferencia con antelación a juicio celebrada el 3 de junio de 2003, se insistió en si se solicitaba algún tipo de remedio respecto a dicha causa de acción y la parte apelante expresó: “Nunca lo hemos solicitado porque no hemos solicitado los remedios de dicha ley, pero si para disponer del asunto es necesario decir que desistimos, pues desistimos.” (Escrito de Apelación, pág. 22.)
A tenor con las expresiones hechas por la parte apelante en su escrito de apelación, respecto a las supuestas reclamaciones presentadas al amparo de la Ley Núm. 80, supra, entendemos que nada más hay que disponer, pues dicha parte reconoce que ningún remedio se solicitó a su amparo. El dictamen del Tribunal de Primera Instancia, no tiene efecto adverso alguno a la parte apelante, pues ésta había desistido de la reclamación bajo la Ley Núm. *648 80,supra.
III
Como segundo error, alega la parte apelante Horacio Suero y Rhina Pérez que erró el tribunal de instancia al desestimar la causa de acción de discrimen por razón de origen nacional, al amparo de la Ley Núm. 100, supra.
A
Ley sobre discrimen por razón de origen nacional
El Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, establece como principio fundamental y rector de todo individuo que la dignidad del ser humano es inviolable. Su primera sección específicamente expone:

“[l]a dignidad del ser humano es inviolable. Todos los hombres son iguales ante la ley. No podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. ”

1 L.P.R.A.
La Ley Núm. 100, supra, de conformidad con el principio constitucional anteriormente esbozado, reconoció una causa de acción civil para toda persona que hubiese sido despedida o de otro modo se viere negativamente afectada en su empleo por motivo de su edad, raza, color, religión, origen o condición social. Ibáñez v. Molinos de P.R., Inc., 114 D.P.R. 42, 50 (1983).
Al interpretar la Ley Núm. 100, supra, se deben tomar en consideración los valores sociales y económicos recogidos en la legislación laboral de proteger a la masa trabajadora contra el discrimen en el empleo y en el reclutamiento, interpretando tales estatutos de la manera más favorable al empleado víctima de actuaciones discriminatorias e injustificadas, pero realizando un balance adecuado con las prerrogativas gerenciales del patrono. Díaz Fontánez v. Wyndham Hotel Corp., supra, pág. 263.
La Ley Núm. 100, supra, contiene en su Artículo 3 una presunción controvertible de discrimen. Para activar la presunción de discrimen, el empleado tiene que probar lo siguiente: (1) que hubo un despido o acción peijudicial; (2) que éste se realizó sin justa causa; (3) presentar evidencia indicativa de la modalidad de discrimen que se vincula al despido. 29 L.P.R.A. see. 148; Díaz Fontánez v. Wyndham Hotel Corp., supra, pág. 263.
B
La prescripción de las acciones de discrimen por origen nacional
La prescripción constituye una forma de extinción de un derecho debido a la inercia en ejercerlo por su titular, durante un tiempo determinado. Nazario Acosta v. E.L.A., opinión de 30 de junio de 2003, 2003 J.T.S. 116, pág. 1204; Santiago Rivera v. Ríos Alonso, opinión de 7 de febrero de 2002, 2002 J.T.S. 21, pág. 714. El propósito de la institución de la prescripción es castigar la inercia en el ejercicio de los derechos y asegurar así el tráfico jurídico, al evitar litigios difíciles de adjudicar por la antigüedad de sus reclamaciones. Padín Espinosa v. Co. de Fomento, opinión de 25 de febrero de 2000, 2000 J.T.S. 44, pág. 759; Zambrana Maldonado v. E.L.A., 129 D.P.R. 740, 751 (1992).
La causa de acción que surge como consecuencia de un acto de discrimen ilegal, tiene un término prescriptivo de un año. En tales casos, el término prescriptivo comienza a transcurrir a partir de la notificación de la acción arbitraria e ilegal y en un caso de despido ilegal, el término prescriptivo comienza a transcurrir a partir del momento en que el apelado es notificado de la cesantía. Nazario Acosta v. E.L.A., supra, pág. 1209. Ello es así, *649 debido a que es a partir de este momento que el agraviado adviene en conocimiento de los daños que le ocasionó la actuación arbitraria. Ríos Quiñones v. Administración de Servicios Agrícolas, 140 D.P.R. 868, 872 (1996).
C
Aplicación del derecho a los hechos del caso
El apelante Suero Pérez nos señala que erró el Tribunal de Primera Instancia, al desestimar su causa de acción de discrimen por razón de su origen nacional presentada al amparo de la Ley Núm. 100, supra. Dicha parte fundamenta su alegación en que había sido objeto de varios actos discriminatorios por parte del señor Nelson Crespo, por ser de nacionalidad dominicana, desde el año 1995, y finalmente tuvo una participación activa en la suspensión del 15 de septiembre de 1997.
La parte apelante Suero Pérez, argumenta que fue discriminado por razón de su origen nacional como consecuencia de unas discrepancias que tuvo con Nelson Crespo, sobre su evaluación de desempeño de 5 de noviembre de 1995. Respecto a esta alegación, al igual que concluyó el tribunal de instancia, hay que señalar que está prescrita, ya que era a partir del 5 de noviembre de 1995, que la parte apelante tenía un (1) año para presentar cualquier causa de acción de discrimen al amparo de la Ley Núm. 100, supra, y no fue hasta 17 agosto de 1998, luego de haber transcurrido más de dos (2) años, que presentó la misma.
Además, Suero Pérez alega que fue discriminado al ser el único empleado de origen dominicano cuestionado y suspendido por los hechos ocurridos el 12 de septiembre de 1997. Según surge del expediente ante nuestra consideración, la razón por la cual Suero Pérez fue suspendido de sus funciones en Eli Lilly, se debió a una medida preventiva y de seguridad ante la irregularidad de que alegadamente se encontraron unas pastillas fuera del área de producción, específicamente en el área de los “lockers” de la compañía, lugar donde él estaba al momento de los hechos. Por tanto, los motivos que tuvo Eli Lilly para suspender a Suero Pérez no fueron discriminatorios por razón de su origen nacional y sí unos legítimos y válidos enmarcados dentro de los contornos de la seguridad de la compañía. Además, el otro empleado que fue suspendido por tales eventos era de origen puertorriqueño.
También hay que señalar que Eli Lilly, desde el momento de su reclutamiento, conocía que Suero Pérez era de origen dominicano y que a pesar de ello le dieron el empleo y luego del incidente de las pastillas, fue promovido a una escala superior. (Ap., pág. 187.)
Por ello, concluimos que no incidió el tribunal de instancia al desestimar la causa de acción por alegado discrimen por origen nacional presentadas al amparo de la Ley Núm. 100, supra, debido a que la prueba no demuestra que hubiera un acto discriminatorio, sino todo lo contrario, las actuaciones de la compañía estuvieron enmarcadas dentro de los límites de la prudencia.
En conclusión, el error no fue cometido.
IV
Como tercer error, alega la parte apelante que incidió el Tribunal de Primera Instancia al desestimar las causas de acción presentadas por violación de derechos constitucionales.
A
Los derechos constitucionales personales
La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, en su Art. II, Secs. 1 y 2, expresa el derecho a la dignidad, integridad personal e intimidad del ser humano contra ataques abusivos a su honra, reputación y a su vida privada o familiar. 1 L.P.R.A.
*650 El derecho a la dignidad, integridad personal e intimidad son derechos constitucionales fundamentales que gozan de la más alta jerarquía y constituye una gran dimensión en los derechos humanos. Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35, 62 (1986). El derecho a la intimidad opera ex propio vigore y puede hacerse valer entre personas privadas y protege a todo trabajador contra riesgo a su integridad personal en el trabajo. Sin embargo, el derecho a la intimidad no es un derecho absoluto, ni “vence a todo valor en conflicto bajo todo supuesto posible.'” Castro Cotto v. Tiendas Pitusa, Inc., opinión de 9 de junio de 2003, 2003 J.T.S. 101, pág. 1131; Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 179, 190 (1998).
El mandato constitucional que se proteja a las personas contra ataques abusivos a su intimidad dependerá de las circunstancias particulares en que se manifiesta la acción estadual o personal en cada caso y la naturaleza del interés privado que se quiere proteger. Castro Cotto v. Tiendas Pitusa, Inc., supra.
Tanto el derecho a la intimidad como al trabajo son derechos consubstanciales con la dignidad del ser humano. Sin embargo, estos derechos se pueden restringir si hay una amenaza real a nuestra seguridad nacional, o un grave peligro para el orden social, o cualquier otro interés apremiante que justifique la intromisión con los mismos. Se ha reconocido que la industria farmacéutica que produce sustancias controladas, podría tener la necesidad de proteger intereses sociales más apremiantes que el derecho a la intimidad de los empleados. Arroyo v. Rattan Specialties, Inc., supra, pág. 61, nota 32.
B
Aplicación del derecho a los hechos del caso
La parte apelante nos alega que incidió el tribunal de instancia al desestimar sus causas de acción por violación a sus derechos constitucionales a la dignidad, integridad personal e intimidad.
Al evaluar las circunstancias particulares del caso, no podemos concluir, como pretende la parte apelante que hagamos, que las actuaciones de la compañía en el transcurso de una investigación de una irregularidad con uno de sus productos, en la cual se tuvo que intervenir con empleados que estuvieron en el lugar en el cual ocurrieron los hechos del 12 de septiembre de 1997, se entienda que hubo una intromisión en el derecho a la dignidad, integridad personal e intimidad de dichos empleados.
En situaciones como la del presente caso en las que hay envueltas consideraciones de seguridad pública e intereses apremiantes que proteger, el derecho a la intimidad de los empleados que trabajan en estas industrias farmacéuticas tiene que ceder ante los mismos, cuando se da este tipo de irregularidad.
Por lo tanto, somos del criterio de que no incidió el foro apelado al desestimar en el caso de autos las causas de acción por violación a los derechos constitucionales de dignidad, integridad personal e intimidad. Todo ello con más razón cuando el trámite que realizó Eli Lilly fue uno razonable dentro de un marco de respeto y confidencialidad y no se pudo establecer que se abusó la honra y reputación de la parte apelante.
y
Como cuarto error, alega la parte apelante que incidió el Tribunal de Primera Instancia al desestimar las causas de acción por difamación, libelo y calumnia, presentadas al amparo de la Ley de Libelo y Calumnia.
No les asiste la razón. Veamos.
A
Difamación, libelo y calumnia
En Puerto Rico, las acciones por libelo y calumnia se dan al amparo de la Ley de Libelo y Calumnia de 19 de *651 febrero de 1902, 32 L.P.R.A. see. 3141, y al amparo del Artículo 1802 del Código Civil, supra. Acevedo v. Wester Digital Caribe, Inc., 140 D.P.R. 452, 460 (1996). A su vez, esta acción está cimentada sobre el derecho constitucional que tiene toda persona a la protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar. Artículo II, Sección 8 de la Constitución del Estado Libre Asociado de Puerto Rico. 1 L.P.R.A.
En lo que respecta a la acción en daños por difamación, ésta va dirigida a vindicar el interés social sobre la reputación de la persona. Parrilla v. Rangers American of P.R., 133 D.P.R. 263, 272 (1993); Torres Silva v. El Mundo, Inc., 106 D.P.R. 415, 423 (1977).
La sección 2 de la Ley de Libelo y Calumnia define el libelo como la difamación maliciosa que públicamente se hace contra una persona por escrito u otro medio mecánico de publicación, dirigido a deshonrarlo, desacreditarlo o menospreciarlo, ante los demás. 32 L.P.R.A. see. 3142. Por otro lado, la sección 3 de dicha ley dispone que es calumnia, la publicación falsa o ilegal que no sea libelo, que impute a una persona la comisión de un delito o que lo perjudique en su profesión, negocio o comercio. 32 L.P.R.A. see. 3143.
En una acción por libelo y calumnia, debe probarse que la información publicada es falsa y difamatoria y que por causa de su publicación se causaron daños reales. Por lo tanto, se reconoce que la verdad de lo publicado, siempre es defensa. Porto y Siurano v. Bently P.R., Inc., 132 D.P.R. 331, 345 (1992); Villanueva v. Hernández Class, 128 D.R.R. 618, 642 nota 14 (1991).
Para que prospere una reclamación de una persona privada por libelo, es necesario que establezca que la publicación de una comunicación que se reputa falsa y difamatoria, le causó daños y que se debió a conducta negligente. El concepto negligencia se define según el ámbito reconocido en el campo de la responsabilidad extracontractual. Acevedo v. Western Digital Caribe, Inc., supra, pág. 461; Oliveras v. Paniagua Diez, 115 D.P.R. 257, 262 (1984).
El elemento de publicación se configura cuando la expresión difamatoria es comunicada a una tercera persona distinta de la difamada. Por tal razón, las palabras o expresiones difamatorias hechas a la propia persona difamada no constituye publicación, a menos que un tercero se entere de la comunicación. Se ha sostenido que la regla general es que el elemento de la publicación no se configura cuando es la propia persona afectada quien comunica la expresión difamatoria a terceras personas. Acevedo v. Western Digital Caribe, Inc., supra; Porto y Siurano v. Bentley P.R., Inc., supra, 346-347 (1992).
B
La difamación en el trabajo y la doctrina de la inmunidad cualificada
En el ámbito obrero-patronal, cualquier comunicación de la actuación libelosa por parte de la empresa a una persona distinta del empleado afectado, automáticamente configura el elemento de la publicación. Se ha resuelto que las comunicaciones intracorporativas, que tengan el efecto de degradar o menospreciar la reputación de un empleado, claramente afectarán las relaciones de éste con los otros miembros de la corporación y, posiblemente, de la comunidad en que vive. La reputación de una persona en su empleo puede ser menospreciada mediante cualquier comunicación intracorporativa y, si hay prueba de la misma, el elemento de publicación queda satisfecho. Porto y Siurano v. Bentley P.R., Inc., supra, pág. 348.
Las comunicaciones que se consideran condicionalmente privilegiadas son las siguientes:
“[...]. Comunicación del ‘patrono’ a gerentes o supervisores de un empleado despedido, informándole las razones del despido; comunicaciones hechas a patronos prospectivos informándoles la razón del despido del empleado; manifestaciones hechas en las hojas de evaluación de rendimiento de un empleado; dando *652 información de referencia acerca de un empleado a otros patronos potenciales; comunicaciones entre supervisores y empleados de personal. ” (Citas omitidas.)
Porto y Siurano v. Bently P.R. Inc., supra, págs. 354-355.
El privilegio condicional comprende la publicación de toda comunicación hecha de buena fe en relación con un asunto en que el autor tiene interés o con respecto al cual tiene un deber que cumplir hacia otros. Porto y Siurano v. Bentley P.R, Inc., supra, pág. 354.
C
Aplicación del derecho a los hechos del caso
Olivero Tirado y Suero Pérez alegan que fueron difamados por la reunión celebrada el 15 de septiembre de 1997 de los hechos ocurridos el 12 de septiembre de 1997, por la forma en que fueron sacados de la planta y los comentarios y rumores que hacían otros empleados de su persona.
Respecto a las alegaciones de difamación hechas por Suero Pérez, hay que señalar que dicha parte no había escuchado los mismos de parte de la gerencia de Eli Lilly, sino de sus compañeros de empleo. (Ap., págs. 208, 241-243.) También Suero Pérez admitió en su deposición de 19 de marzo de 1999, que le contó los hechos que motivaron la presente causa de acción a miembros de su familia, incluyendo a su mamá y a su tía, así como que discutió el asunto con sus compañeros de trabajo. (Ap., págs. 160, 205-208, 222, 241.) Por otra parte, Suero Pérez admitió que no le constaba de propio y personal conocimiento que la compañía hubiese distribuido entre los guardias de seguridad, algún tipo de memorando relacionado a su persona y a la suspensión de la cual fue objeto. (Ap., págs. 237-238.)
Respecto a las alegaciones hechas por Olivero Tirado, hay que señalar que éste indicó en su deposición de 10 de agosto de 1999, que la única persona de la gerencia de Eli Lilly que habló sobre el incidente de las púlvulas, fuera de la reunión que sostuvieron el 15 de septiembre de 1997, fue a Nancy Rivera al entrevistar a Héctor Tirado, empleado que dicha parte había identificado en el área de los “lockers’' al momento de ocurrir el incidente. (Ap., págs. 300-302.) Reconoció Olivero Tirado que no tenía conocimiento personal que alguna persona de la gerencia de Eli Lilly, hubiera hecho comentario alguno sobre lo acontecido en la reunión de 15 de septiembre de 1997, en la cual se encontraban José Arce, Nelson Crespo, Nancy Rivera y Alberto Rodríguez. (Ap. págs. 303-308.) Además, Olivero Tirado admitió haber contado los hechos que dan origen a la presente demanda a su padre, esposa e hijos, así como a sus compañeros de trabajo. (Ap., págs. 273-279, 303-304.)
De conformidad con lo anteriormente expuesto, hay que concluir que no se dan los requisitos para que se configure una causa de acción por difamación, pues no se pudo probar que en efecto hubo una publicación que contuviera una información falsa, que difamara y causara algún tipo de daño real. Por el contrario fueron los propios apelantes quienes divulgaron lo sucedido a sus familiares y compañeros de trabajo, por lo que están impedidos de imputarle a Eli Lilly responsabilidad por la divulgación de la información alegadamente difamatoria.
Hay que aclarar que los cuatro miembros gerenciales presentes en las reuniones de 15 de septiembre de 1997, estaban desempeñando las funciones y deberes de sus puestos y siendo los encargados de velar por el buen funcionamiento y el cumplimiento de las reglas y reglamentos establecidos por la compañía, lo acontecido en la misma estaba cobijado por la doctrina de inmunidad condicional.
Concluimos que no incidió el Tribunal de Primera Instancia, al desestimar las causas de acción por libelo y calumnia presentadas por la parte apelante, pues no había alegación y prueba alguna de que Eli Lilly divulgara lo acontecido durante la reunión y la investigación a terceras personas.
*653 VI
Como quinto error, alega la parte apelante que incidió el tribunal de instancia al desestimar las causas de acción por detención ilegal.
Tampoco le asiste la razón.
A
Detención ilegal
En nuestro sistema de derecho existe una causa de acción en daños y perjuicios por detención ilegal, la cual se ventila al amparo del Artículo 1802 del Código Civil, supra. Castro Cotto v. Tiendas Pitusa, Inc., supra, pág. 1130.
Los elementos constitutivos de la causa de acción por detención ilegal son los siguientes: 1) la intención de producir la detención ilegal o certeza sustancial de que el acto ejecutado volitivamente producirá ésta; 2) el acto positivo o afirmativo en la dirección de producir ilegalmente la detención involuntaria del perjudicado; 3) que se produzca ilegalmente la detención o la confinación total; 4) que la detención sea involuntaria; 5) el perjudicado tiene que estar consciente de su detención, y 6) que exista relación causal, suficiente en derecho, entre el acto del demandado y la detención o confinación del demandante. Alamo Pérez v. Supermercado Grande Inc., opinión de 12 de septiembre de 2002, 2002 J.T.S. 124, pág. 182; Parrilla v. Rangers American of P.R., 133 D.P.R. 263, 272 (1993); H. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, 2da. Ed., San Juan, Puerto Rico, Publicaciones JTS, 1986, Vol. 1, pág. 96.
Por último, hay que señalar que la procedencia o no de la causa de acción por detención ilegal va a depender de criterios de razonabilidad, a tenor con las circunstancias particulares de cada caso. No es necesario probar que la persona perjudicada fue arrestada, encarcelada o que se utilizó la fuerza, ni que el perjudicado ofreció resistencia violenta. Solamente basta con probar que el demandado interfirió con la libertad total de movimiento del perjudicado, independientemente de donde se encuentre, para que se configure la causa de acción. Castro Cotto v. Tiendas Pitusa, Inc., supra, pág. 271.
B
Aplicación del derecho a los hechos del caso
Considerando los hechos del caso ante nos, hay que concluir que no se configura la causa de acción por detención ilegal. Primero, la compañía Eli Lilly en ningún momento tuvo la intención de restringirle la libertad a la parte apelante, pues en realidad lo que sucedió fue que la compañía realizó una reunión a puerta cerrada con cada uno de ellos, para discutir lo sucedido el 12 de septiembre de 1997. Segundo, en ningún momento antes, durante, ni después de la reunión, la parte apelante fue restringida de su libertad.
Surge de la deposición tomada a Olivero Tirado el 10 de agosto de 1999, que dicha parte no fue objeto de detención ilegal, ya que en la misma expresó lo siguiente:

P Usted alega en la demanda, señor Olivero, que usted se sintió humillado, difamado, atacado en su honra, privado de su libertad, amedrentado en su seguridad y coaccionado. Dígame de qué manera usted se sintió privado de su libertad.

R Yo estuve en esa reunión, yo no me pude salir de ahí.

*654
P ¿Intentó usted salirse en alguna ocasión?

R No. Pero no me podía salir de ahí porque estaba la puerta trancada.

P ¿Estaba la puerta con seguro?

R ¿Estaba... desconozco si estaba la puerta con seguro.

P ¿ Usted en algún momento le expresó a cualquiera de los miembros de la gerencia que estaba en esa reunión con usted que usted quería retirarse de la reunión?

RNo.

P ¿ Usted en algún momento se levantó de la silla donde estaba sentado con intenciones de retirarse?

RNo.

P ¿Había alguien impidiendo su salida de la oficina del señor Arce?

R Yo creo que no.

P Es decir, que si usted se hubiese querido levantar, lo hubiera podido hacer y hubiera podido abrir la puerta y salir.

R Desconozco si hubiera podido hacer eso.

P Pero no había nadie en ese momento impidiendo su salida.

RNo.

(Ap., pág. 309.)
Por otro lado, de la deposición tomada a Suero Pérez, el 19 de marzo de 1999, dicha parte tampoco fue objeto de detención ilegal, ya que en la misma expresó lo siguiente:

P Okey. Usted mencionó la palabra ‘trancado ’. Que usted se sentía trancado allí.

R Encerrado.

P Yo le pregunto si en algún momento usted manifestó que usted se quería ir de esa oficina y alguien se lo impidió.

R En ningún momento yo dije que me quería ir.

*655 (Ap, pág. 214.)
De conformidad con lo anteriormente expuesto hay que concluir que no incidió el tribunal de instancia al desestimar la causa de acción por detención ilegal, pues en el caso de autos no están presentes los requisitos necesarios para que se configure dicha causa de acción. Es claro que a Suero Pérez y Olivero Tirado no se les privó de su libertad de movimiento y no fueron objeto de detención ilegal; además, ellos estaban en una región de su trabajo.
No incidió el foro apelado al respecto.
VII
Luego de haberse expuesto la norma jurídica sobre el aspecto sustantivo y discutir su aplicación al caso de autos, procedemos a exponer la norma jurídica en cuanto a lo procesal.
Alega la parte apelante respecto al aspecto procesal que erró el Tribunal de Primera Instancia, al declarar con lugar la moción de sentencia sumaria presentada por la parte apelada Eli Lilly, cuando existen controversia de hechos.
Tampoco les asiste la razón. Veamos porqué.
A
La moción de sentencia sumaria
La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. m, establece que se dictará sentencia sumaria si se demostrase’ que no hay controversia real sustancial en cuanto a ningún hecho y que como cuestión de derecho debe dictase sentencia. El propósito es propiciar la solución justa, rápida y económica de los litigios. Santiago Rivera v. Ríos Alonso, opinión de 7 de febrero de 2002, 2002 J.T.S. 21, pág. 716. (Casos citados.)
La sentencia sumaria procede cuando la parte promovente le demuestra al tribunal que no existe necesidad de que se celebre una vista evidenciaría del caso en su fondo. Mgmt. Ad. Serv. Corp. v. E.L.A., opinión de 29 de noviembre de 2000, 2000 J.T.S. 189, pág. 440. Solamente debe dictarse una sentencia sumaria en aquellos casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos pertinentes. Rosario Ortiz v. Nationwide Mutual Insurance Co., opinión de 4 de marzo de 2003,2003 J.T.S. 34, pág. 641. (Casos citados.)
B
Aplicación del derecho a los hechos del caso
La parte apelada Eli Lilly, con su moción de sentencia sumaria estableció fehacientemente que no procedían en el caso las causas de acción presentadas por la parte apelante de despido injustificado, discrimen por razón de origen nacional, violación a los derechos constitucionales de dignidad, integridad personal e intimidad, detención ilegal, libelo y calumnia. Al no existir controversia de hechos respecto a estos extremos, según antes discutimos, procedía en efecto dictar sentencia sumaria como lo hizo el Tribunal de Primera Instancia.
Es precisamente para este tipo de caso que está disponible el mecanismo de la sentencia sumaria; por lo tanto, no incidió el foro apelado al aplicar el derecho y desestimar las causas de acción presentadas por la parte apelante.
VIII
Por los fundamentos anteriormente expuestos, se confirma la sentencia parcial apelada según sus términos y condiciones y se devuelve el caso al Tribunal de Primera Instancia, Sala de Carolina, para la continuación de los procedimientos según pautados.
*656 Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General