ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ROSA ELENA CORRETJER COLLAZO, ET AL.<br><br>Parte Apelada<br><br>v.<br><br>JUAN CARLOS BORGOS BANCHS, ET AL.<br><br>Parte Apelante | KLAN202400379 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.:<br>F AC2012-0462<br><br>Sala: 406<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Romero García y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 14 de mayo de 2024.

Compareció ante este Tribunal la parte apelante, el Sr. Juan C. Borgos Banchs (en adelante, el "señor Borgos Banchs" o "Apelante"), mediante recurso de apelación presentado el 15 de abril de 2024. Nos solicitó la revocación de la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, el "TPI"), el 14 de marzo de 2024, notificada y archivada en autos al día siguiente. Mediante dicho dictamen, el TPI declaró "Ha Lugar" la "**Moción de Sentencia Sumaria**" interpuesta por la parte apelada, la Sra. Rosa Elena Corretjer Collazo, el Sr. José Alberto Triay Bonilla y la Sociedad Legal de Gananciales compuesta por ambos (en adelante y en conjunto, el "matrimonio" o los "Apelados") y desestimó, con perjuicio, la "**Reconvención**" presentada por el Apelante.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

Número Identificador
SEN2024_____

**I.**

El caso de auto tuvo su génesis el 22 de febrero de 2012, con la presentación de una "**Demanda**" sobre daños y perjuicios por parte del matrimonio en contra del Apelante. En su escrito expresaron que el 1 de noviembre de 2010 otorgaron cierta escritura ante el notario Pablo F. Jiménez Meléndez (en adelante, "Lcdo. Jiménez Meléndez") mediante la cual le traspasaron al señor Borgos Banchs una propiedad localizada en el complejo Playa Dorada en el Municipio de Carolina.

Asimismo, alegaron que el Apelante incumplió con los acuerdos establecidos en el tercer inciso de las cláusulas y condiciones de la referida escritura, las cuales indican que este último asumiría una deuda hipotecaria que gravaba la propiedad inmueble y se comprometía a realizar los correspondientes pagos mensuales. Enunciaron que la propiedad objeto de esta controversia se encontraba garantizada con un pagaré a favor de CitiMortgage Inc. (en adelante, "CitiMortgage"). De igual modo, adujeron que, como consecuencia de los múltiples incumplimientos del señor Borgos Banch con los pagos de la hipoteca, la cuenta se encontraba atrasada y estuvo en "default" en los meses de mayo, julio, septiembre y noviembre del año 2011, provocándoles un perjuicio irreparable en su historial crediticio. Además, señalaron que la referida hipoteca continuaba registrada a su nombre y aún no había sido saldada, lo que representaba una violación adicional a los términos y condiciones pactadas en la escritura.

A tenor con lo anterior, solicitaron la resolución y nulidad de la aludida escritura y una suma no menor de cien mil dólares ($100,000.00) como indemnización por los presuntos daños y perjuicios ocasionados, al no haber sido liberados de la responsabilidad crediticia que pesa sobre ellos y los pagos efectuados con retraso. También requirieron el pago de una cantidad no menor de cincuenta mil dólares ($50,000.00), por concepto de las angustias mentales ocasionadas.

El 10 de febrero de 2015, el señor Borgos Banchs presentó una "**Reconvención**", a través de la cual sostuvo que el matrimonio recibió

varios cheques que el realizó por concepto del pago de la hipoteca y que los retuvo sin notificarle sobre las devoluciones del banco. Asimismo, expresó que, como consecuencia de las actuaciones de los Apelados, comenzó un proceso de ejecución de hipoteca del inmueble en controversia. Indicó que desconocía de la devolución y retención de los aludidos cheques, por lo que entendía que los pagos de la propiedad no estaban atrasados. Por último, argumentó que las actuaciones negligentes del matrimonio le han ocasionado daños económicos y emocionales.

Más adelante, el 6 de febrero de 2017, los Apelados enmendaron la "**Demanda**" a los fines de modificar el remedio solicitado e incluir a las corporaciones Fast Lane Ent Corp. y Fast Lane Enterprises como codemandadas, bajo el fundamento de que éstas eran un *alter ego* del señor Borgos Banch. Así pues, sostuvieron que los daños ocasionados por las angustias mentales ascendían a una suma no menor de setenta y cinco mil dólares ($75,000.00). También exigieron: (1) la compensación por cualquier daño derivado del proceso de ejecución de la propiedad, así como el reembolso de los gastos legales, costas y honorarios de abogado; (2) una cantidad no menor de ciento sesenta y cuatro mil ochocientos veintidós dólares con cuarenta y siete centavos ($164, 822. 47) por enriquecimiento injusto; y (3) la imposición de honorarios de abogado por temeridad. Posteriormente, el 25 de julio de 2018, los Apelados presentaron una "**Segunda Demanda Enmendada**" a los fines de señalar que la hipoteca de la propiedad objeto de esta controversia fue ejecutada y se les ordenó satisfacer la cantidad de $384,058.39 en principal, más un $6.875% de intereses y cargos por demora. No obstante lo anterior, el 21 de julio de 2021, notificada el 18 de agosto del mismo año, el foro de instancia dictó *Sentencia Parcial* mediante la cual desestimó la "**Segunda Demanda Enmendada**".

Luego de un extenso trámite procesal impertinente al caso que nos ocupa, el 24 de enero de 2024, el matrimonio presentó una "**Moción de Sentencia Sumaria**" mediante la cual argumentó que no existía controversia de hechos que impidiera la disposición de la "**Reconvención**"

por la vía sumaria. En detalle, alegó que procedía dictar sentencia sumaria a su favor ya que: (1) CitiMortgage devolvió cinco cheques que fueron recibidos después de que las partes fueran demandadas y emplazadas en un caso paralelo, Caso Núm. FCD2012-0820 (en adelante, "Caso Paralelo"), (2) no había ningún deber de devolver los cheques en cuestión, (3) no existía la obligación de informar al señor Borgos Banchs sobre la devolución de los cheques, (4) los Apelados no incurrieron en ningún acto de negligencia, (5) los presuntos daños sufridos por el Apelante respecto a los pagos efectuados a CitiMortgage, ya fueron abordados en el caso otro caso bajo el alfanumérico SJ2018CV10859,[1] mediante el cual se dictó *Sentencia*, y (6) cualquier otro daño fue resultado de sus propias actuaciones. A la misma, anejó la prueba documental que entendía justificaba la disposición sumaria del caso.

Cabe destacar que el Caso Paralelo fue una acción de cobro de dinero y ejecución de hipoteca que interpuso CitiMortgage en contra del matrimonio y el señor Borgos Banchs, la cual, culminó con una *Sentencia Sumaria* dictada por el TPI y confirmada por un panel hermano de este Tribunal de Apelaciones, bajo el caso núm. KLAN201701235, a favor de la Federal National Mortgage Association t/c/c Fannie Mae, entidad a favor de quien CitiMortgage cedió el crédito evidenciado en el pagaré en cuestión. Al día de hoy, dicho dictamen es final y firme.

Posteriormente, el 4 de marzo de 2024, el señor Borgos Banchs presentó "**Moción en Oposición a Solicitud de Sentencia Sumaria**", a través de la cual adujo que el matrimonio no logró demostrar los hechos que afirman que no están en controversia. Especificó que los siguientes hechos materiales estaban en disputa: (1) si los cheques fueron emitidos después de la presentación de la "**Demanda**" y por montos inferiores a las mensualidades correspondientes y (2) si los Apelados cambiaron los cheques recibidos por CitiMortgage. A la luz de ello, solicitó que se declara "No Ha Lugar" la "**Moción de Sentencia Sumaria**".

---

[1] De conformidad con la Regla 201 de las de Evidencia, tomamos conocimiento judicial de dicho pleito. 32 LPRA Ap. VI, R. 201.

Finalmente, el 14 de marzo de 2024, el TPI emitió la *Sentencia* mediante la cual desestimó, con perjuicio, la "**Reconvención**" incoada por el señor Borgos Banchs. Inconforme con lo anteriormente resuelto, el Apelante acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

A. ERR[Ó] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA R[É]PLICA A LA APELACI[Ó]N NO CUMPLE CON LA REGLA 36.

B. ERR[Ó] E INCIDI[Ó] EN ABUSO DE DISCRECCION [sic] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR HA LUGAR LA SENTENCIA SUMARIA CONTRARIO A DERECHO.

C. ERR[Ó] E INCIDI[Ó] EN ABUSO DE DISCRECCION [sic] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR HA LUGAR LA SENTENCIA SUMARIA CUANDO EXISTEN HECHOS EN CONTROVERSIA.

D. ERR[Ó] E INCIDI[Ó] EN ABUSO DE DISCRECCION [sic] EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA SUMARIA A FAVOR DE UNA PARTE EN REBELDIA.

El 7 de mayo de 2024, compareció el matrimonio mediante "**Oposición a Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal tenga ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe demostrar que existe controversia en cuanto a algún hecho material que sea constitutivo de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi *et al.*, 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar

contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 680; Roldán Flores v. M. Cuebas et al., 199 DPR 664, 677 (2018).

Según las directrices pautadas por nuestro más Alto Foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005) (énfasis suplido).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004)*.* De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está

vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. Ramos Pérez v. Univisión de P.R, 178 DPR 200, 2019 (2010); Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219.

**B.**[2]

El Artículo 1802 del Código Civil de 1930 dispone, en su parte pertinente, que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." 31 LPRA sec. 5141. En cuanto a este precepto y su aplicación, se ha establecido que sólo procede la reparación de un daño cuando se demuestren los siguientes elementos indispensables: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. Nieves Díaz v. González Massas, 178 DPR 820, 843 (2010).

En particular, el concepto de daños ha sido definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". López v. Porrata Doria, 169 DPR 135, 151 (2006). En esa misma línea doctrinal, se ha establecido que la culpa o negligencia es la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias. Nieves Díaz v. González Massas, *supra*, pág. 844; Rivera v. S.L.G. Díaz, 165 DPR 408, 421 (2005); Toro Aponte v. E.L.A., 142 DPR 464, 473 (1997); Ramos v. Carlo, 85 DPR 353, 358 (1962). Respecto a la relación causal, ésta es un componente imprescindible en una reclamación en daños y perjuicios, ya que "es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico." Rivera v. S.L.G. Díaz, *supra*, pág. 422. Del daño culposo o negligente surge el deber de indemnizar que "presupone nexo causal entre el daño y el hecho que lo origina, pues sólo se han de indemnizar los daños

---

[2] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de 2020" y se derogó el Código Civil de 1930. Sin embargo, el Artículo 1815 del Código Civil de 2020 dispone que: "La responsabilidad extracontractual, tanto en su extensión como su naturaleza, se determina por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad. Si unos actos u omisiones ocurrieron antes de la vigencia de este Código y otros ocurrieron después, la responsabilidad se rige por la legislación anterior". 31 LPRA sec. 11720. Por tanto, para propósitos de adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado.

que constituyen una consecuencia del hecho que obliga a la indemnización". López v. Porrata Doria, *supra*, pág. 151.

Esto último se refiere a la teoría de causalidad adecuada que rige en nuestro ordenamiento. De acuerdo a ella, no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general. Montalvo v. Cruz, 144 DPR 748, 756 (1998). La jurisprudencia ha sostenido que un daño parece ser el resultado natural y probable de un acto negligente, si después del suceso y mirando retroactivamente dicho acto, tal daño aparece como la consecuencia razonable y ordinaria del acto. Torres Trumbull v. Pesquera, 97 DPR 338, 343-344 (1969); Estremera v. Inmobiliaria RAC, Inc., 109 DPR 852, 856 (1980). El principio de causalidad adecuada requiere que en todo caso de daños y perjuicios el demandante pruebe que la negligencia del demandado fue la que con mayor probabilidad causó el daño sufrido. Parrilla Báez v. Airport Catering Services, y otros, 133 DPR 263, 270 (1993). De esta forma, un demandado responde en daños si su negligencia por su acción u omisión es la causa próxima o eficiente del daño, aun cuando no sea la única causa del daño. Velázquez v. Ponce, 113 DPR 39, 45 (1982).

Por tanto, la cuestión se reduce a determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo. Siguiendo esta tónica, en caso de concurrencia de causas, el Tribunal Supremo ha resuelto que la cuestión a dilucidar es cuál de las causas fue la eficiente. Es decir, hay que estimar como decisiva la que por sus circunstancias determina el daño. Valle v. Amer. Inter. Ins. Co., 108 DPR 692, 697 (1979).

**III.**

En el presente caso, el Apelante nos solicitó que revoquemos la *Sentencia* del TPI, a través de la cual se declaró "Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por el matrimonio.

Los señalamientos de error esgrimidos están íntimamente relacionados, por lo tanto, se abordarán de forma conjunta en la discusión.

En síntesis, el señor Borgos Banchs plantea que el foro primario abusó de su discreción al declarar "Ha Lugar" la "**Moción de Sentencia Sumaria**" y desestimar la "**Reconvención**". No le asiste la razón. Veamos.

Surge del expediente ante nuestra consideración que el 16 de julio de 2007, los Apelados suscribieron un pagaré hipotecario con CitiMortgage por la suma principal de $367,000.00. Para garantizar dicha deuda, constituyeron una hipoteca sobre el inmueble localizado en el Municipio de Carolina. Tres (3) años después, otorgaron una escritura de compraventa con el señor Borgos Banchs, mediante la cual este último adquirió la titularidad del referido inmueble y asumió la deuda hipotecaria anteriormente detallada. Así las cosas, el 10 de noviembre de 2012, CitiMortgage presentó el Caso Paralelo sobre cobro de dinero y ejecución del gravamen hipotecario en contra de los Apelados y del Apelante. Estando dicho pleito pendiente de adjudicación, los Apelados presentaron la presente acción de daños y perjuicios contra el señor Borgos Banchs. Tras tres (3) años de litigio en el presente caso, el 10 de febrero de 2015, el Apelante presentó su "**Reconvención**".

Sobre este particular, conviene evaluar con detenimiento los actos bajo los cuales el señor Borgos Banchs cimentó su reclamación contra los Apelados. Específicamente, alegó que sufrió daños y perjuicios debido a que el matrimonio retuvo unos cheques que éste efectuó como parte de la deuda hipotecaria que asumió y que fueron devueltos por CitiMortgage, sin que los Apelados le notificaran sobre ello. Además, aludió a que dicha retención sin notificación provocó que CitiMortgage iniciara el Caso Paralelo sobre cobro de dinero y ejecución de la hipoteca en controversia.

Sostuvo en su "**Reconvención**" que al "desconocer de la devolución de los cheques y retención de los mismos por los demandantes entendía que la propiedad no estaba en atraso".[3] Además, planteó que no fue hasta que CitiMortgage notificó de la devolución de los cheques que advino en conocimiento del atraso y solicitó la entrega de los mismos. Así pues, aludió a que la retención de los cheques devueltos, la falta de informarle de ello y

---

[3] *Véase*, Apéndice del recurso de apelación, pág. 170, ¶5.

la continuación de retención de los mismos le había ocasionado daños y perjuicios al provocar un pleito de ejecución de hipoteca sobre la propiedad y el expendio de costas, gastos, honorarios de abogado e intereses y recargos sobre el principal de la deuda.

Amerita, pues, desglosar importantes incidencias y asuntos que fueron adjudicados, de forma final y firme, por el panel hermano de este Tribunal en el Caso Paralelo. Entre otras cosas, se dispuso en dicha *Sentencia* lo siguiente: (1) Citimortgage registró ciertos pagos respecto al préstamo hipotecario en cuestión, efectuados **con posterioridad a la presentación de dicho pleito**; (2) dichos pagos fueron devueltos al matrimonio, por razón de ser los deudores obligacionales del mismo; (3) lo anterior, llevó al Apelante y a los Apelados **a solicitar la producción de la evidencia correspondiente, a los fines de auscultar la naturaleza de los pagos reflejados**; (4) CitiMortgage devolvió los cheques, bajo el fundamento de que, por las condiciones del préstamo y dado a que fueron girados **con posterioridad a la presentación del Caso Paralelo**, estaba impedido de recibir los mismos; y (5) varios de los aludidos cheques se suscribieron por una cantidad menor a la mensualidad aplicable, resultando en la liquidez del crédito reclamado por Fannie Mae.

Establecido lo anterior, conviene que efectuemos el análisis de *novo* de la "**Moción de Sentencia Sumaria**" promovida por el matrimonio y la correspondiente "**Moción en Oposición a Solicitud de Sentencia Sumaria**" presentada por el Apelante. Tras un análisis minucioso y detenido de ambos escritos, en unión con la prueba documental que obra en los autos, coincidimos con el foro *a quo*. La prueba que tuvimos a nuestro haber evaluar, evidencia la inexistencia de controversia de hechos medulares y esenciales, lo cual respalda la legitimidad de las conclusiones de derecho emitidas por el foro sentenciador. Más aún cuando el señor Borgos Banchs no controvirtió los hechos, de conformidad con las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, ni aportó prueba documental que sostuviera su teoría. Así pues, acogemos los hechos esenciales y pertinentes incontrovertidos, según fueron

desglosados por los Apelados en su solicitud de sentencia sumaria, puesto que la *Sentencia* no detalla los mismos, a la luz de las disposiciones de la Regla 42.2 de Procedimiento Civil, *supra*, y de lo resuelto por el Tribunal Supremo en <u>Pérez Vargas v. Office Depot</u>, 203 DPR 687 (2019).

Es norma claramente establecida en nuestro ordenamiento jurídico que procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a algún hecho esencial y pertinente del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. <u>Oriental Bank v. Caballero García</u>, *supra*, pág. 679. Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. <u>Íd</u>., pág. 678. Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos. <u>SLG Szendrey-Ramos v. Consejo de Titulares</u>, *supra*, pág. 168.

Por otra parte, aquel que por acción u omisión genere daño a otro debido a su negligencia o culpa, está compelido a reparar los perjuicios ocasionados. 31 LPRA sec. 5141. La culpa o negligencia se caracteriza por la ausencia del cuidado adecuado, que se traduce en la omisión de anticipar y prever las consecuencias razonables de un acto. <u>Nieves Díaz v. González Massas</u>, *supra*, pág. 844. Así pues, la compensación por daños y perjuicios procede únicamente **cuando se demuestra una conducta negligente o culposa, la relación causal entre dicha conducta y el daño efectivamente sufrido por quien reclama**. <u>Íd</u>. pág. 843.

Conforme hemos adelantado, la reclamación instada por el señor Borgos Banchs de daños y perjuicios a través de la interposición de la "**Reconvención**" está intrínsecamente atada a la alegada retención efectuada por el matrimonio de los cheques devueltos, sin la debida notificación de éstos, lo cual provocó la iniciación del Caso Paralelo por parte de CitiMortgage y el consecutivo decreto de ejecución de la hipoteca en controversia. Sostuvo, además, su desconocimiento del atraso en los pagos de la hipoteca por dicha retención y que no fue hasta que

CitiMortgage notificó de la devolución de los cheques que advino en conocimiento del atraso. Nada más lejos de la verdad. El expediente revela un escenario que dista de dichas alegaciones esgrimidas en contra del matrimonio.

Adviértase que tras la evaluación en los méritos de una solicitud de sentencia sumaria presentada por CitiMortgage en el Caso Paralelo, este Tribunal de Apelaciones determinó, en el caso núm. KLAN201701235, que los cheques devueltos fueron **emitidos y recibidos por el matrimonio con posterioridad a la presentación del Caso Paralelo**, **que los mismos fueron producidos al señor Borgos Banchs como parte de dicho litigio**, **que la razón de la devolución fue porque los mismos fueron expedidos <u>luego</u> de la iniciación del Caso Paralelo** y que varios de éstos se suscribieron por una cantidad menor a la mensualidad aplicable, resultando en la liquidez del crédito reclamado por Fannie Mae.

Por tanto, no existiendo controversia sobre el hecho de que dicho dictamen es final y firme, estamos impedidos de sostener las alegaciones alusivas a los supuestos daños y perjuicios sufridos por el Apelante. Nótese que, bajo el cuadro fáctico y legal que hemos adelantado, no concurre uno de los elementos principales de la causa de acción reconocida en el derogado Artículo 1802 del Código Civil de 1930, *supra*, (hoy Artículo 1536 del Código Civil de 2020, 31 LPRA sec. 10801), a saber: el acto culposo o negligente que provocó los daños alegados. De la "**Reconvención**" surge con meridiana claridad que el acto constitutivo de los daños que reclamó el señor Borgos Banchs, lo fue la retención de los cheques sin notificación de los Apelados que presuntamente provocó que CitiMortgage inciara el pleito de cobro de dinero y ejecución de hipoteca.

La prueba sugiere otra cosa, pues es un hecho adjudicado de manera final y firme por parte de un panel hermano de este Tribunal que los aludidos cheques fueron **devueltos al matrimonio y emitidos por el Apelante <u>con posterioridad</u> a la radicación del Caso Paralelo**. Por tanto, la supuesta retención de los cheques a los que alude el Apelante no pudo ser la circunstancia que provocó la presentación del Caso Paralelo, ni

tampoco la posterior ejecución de la hipoteca como reclama el señor Borgos Banchs en su "**Reconvención**". Asimismo, la prueba en los autos sugiere que tanto el Apelante como los Apelados advinieron en conocimiento del atraso en los pagos de la hipoteca detallado en la "**Reconvención**", luego de la presentación del Caso Paralelo por parte de CitiMortgage. Así pues, siendo final y firme la determinación sobre el hecho de la devolución de los cheques en controversia luego de la iniciación del Caso Paralelo no se configura el acto culposo y negligente alegado por el Apelante. Ello porque la supuesta ocurrencia de los daños y perjuicios presuntamente sufridos está atada a la retención de los referidos cheques y la consecutiva presentación de dicho pleito. Por tanto, coincidimos con el TPI a los efectos de que procedía la desestimación, con perjuicio, de la "**Reconvención**".

Por si fuera poco, el análisis del expediente también revela que, contrario a lo argumentado por el señor Borgos Banchs, los Apelados tampoco cambiaron los aludidos cheques. Ello se comprueba con sólo examinar las alegaciones esgrimidas en la "**Demanda**" que incoó el Apelante en el caso núm. SJ2018CV10859, en contra de CitiMortgage. Allí, específicamente, el señor Borgos Banchs expuso que "[l]os cheques nunca fueron cambiados por los deudores hipotecarios ante Citimortgage y Citimortgage retuvo y retiene dicho dinero sin devolverlo al [Apelante]".[4] De lo anterior, no solo se desprende que los Apelados no cambiaron los cheques, sino que surge una teoría contradictoria a la expuesta en el caso de autos al imputarle en dicha ocasión a CitiMortgage la retención de los mismos.

Finalmente, en cuanto al planteamiento esgrimido por el Apelante a los efectos de que el foro sentenciador incidió al dictar *Sentencia* a favor de una parte en rebeldía, debemos enfatizar en que, de la revisión de los autos originales del TPI, no se desprende dictamen alguno en el que dicho foro le hubiera anotado la rebeldía al matrimonio por no haber presentado

---

[4] *Véase*, Apéndice del recurso, ¶4, pág. 128.

alegación responsiva a la "**Reconvención**". Por tanto, tampoco nos convence dicho argumento.

En fin, somos de la opinión de que en el presente caso procedía la disposición sumaria de la "**Reconvención**", pues no concurre uno de los elementos esenciales de la causa de acción de daños y perjuicios alegada por el señor Borgos Banchs, a saber, la actuación culposa o negligente llevada a cabo por el matrimonio.

**IV.**

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones